WILLIAM CARUTHERS v. THE KANSAS CITY, FORT
SCOTT & MEMPHIS RAILROAD COMPANY.

No. 10650.

LEASE OF RAILROAD—*giving lessee exclusive right to operate trains and reserving to lessor no control, lessor company not liable for lessee company's negligence.*  In the case of a lease made by one railroad company to another under the statute authorizing leases between railroad companies, the lessor company is not liable to third persons for injuries resulting from the negligent operation of the leased line by the lessee company, where the lease is general in its terms and confers upon the lessee company "the exclusive right to run and operate its trains of cars over and upon the track of the lessor company," without reserving to the latter any right of control over the operation of the road by the former.

Error from Bourbon District Court.   Walter L. Simons, Judge.   Opinion filed October 8, 1898.  *Affirmed.*

*J. D. Hill* and *W. R. Biddle,* for plaintiff in error.

*Charles W. Blair, Wallace Pratt, James Black* and *Ed. C. Gates,* for defendant in error.

DOSTER, C. J.   This was an action for damages for bodily injuries negligently inflicted by the plaintiff in error, upon the line of the Fort Scott, Southeastern & Memphis Railway, many years ago.   The facts were presented to the court below in an agreed statement, and in other documentary forms.   Summarized, they are that the Fort Scott, Southeastern & Memphis Railway Company and the Missouri River, Fort Scott & Gulf Railroad Company were Kansas corporations, and the first named company leased its line to the one last named, under the following instrument:

"THIS AGREEMENT, Made this ninth day of December, A. D. 1874, by and between the Fort Scott, Southeastern & Memphis Railway Company, party of the

first part, and the Missouri River, Fort Scott & Gulf Railroad Company, party of the second part, both being corporations existing under the laws of the State of Kansas :

"WITNESSETH, Whereas the said party of the first part has constructed, and is the owner of a railroad track commencing at a point on the main line of the railroad now owned and operated by the said party of the second part about half way between the town of Godfrey and the city of Fort Scott in the county of Bourbon and the state of Kansas, and extending from thence in a general southeasterly direction about six and one-half miles through the vicinity of the coal banks in the said county of Bourbon ; and whereas said party of the first part has no rolling stock and is desirous that the said party of the second part shall furnish the necessary rolling stock and operate said road.

"Now therefore, in consideration of the covenants and agreements hereinafter contained on the part of said party of the second part to be performed, said party of the first part hereby covenants and agrees that it will maintain in good order its track and give to said party of the second part for the term of ten years from and after the date of this contract, unless said contract shall be sooner terminated, the exclusive right to run and operate its trains of cars over and upon said railroad track of the said party of the first part free of charge, but for the purpose only of carrying the coal supplied to the said party of the first part for shipment to any point on the line or beyond the northern terminus of the railroad of the said party of the second part.

"And the said party of the second part further agrees that it will not build, cause to be built, or in any manner whatever encourage the building of any other railroad track within the distance of seven miles of the point where the track of the said party of the first part commences.

"And the said party of the second part agrees further that it will with its own locomotive power and cars transport, without unnecessary delay, for a period of ten years, unless the contract shall be sooner termi-

nated, all coal that may be supplied to the said party of the first part for shipment over its line of railroad from any loading station on the line thereof to Kansas City in the state of Missouri, at the rate of sixteen dollars ($16.00) per car-load of twelve tons each, and for rates as low to any point on the line north of Fort Scott or at and beyond the northern terminus of the railroad of the said party of the second part as shall be given or allowed to any other person or corporation without the consent of the said party of the first part (excepting, however, two contracts now in force), from the city of Fort Scott or any other station south of Fort Scott to any point north on the line or beyond the northern terminus of its railroad.

"And it is further stipulated and agreed, that if the said party of the first part shall hereafter extend its railroad track to the state line between Kansas and Missouri, or to a greater distance than six and one-half miles from the point where the same shall intersect the railroad of the said party of the second part, then and in that case the said party of the second part will operate the same and shall be entitled to receive, and the said party of the first part agrees to pay, the sum of one dollar per car-load in addition to the price herein agreed to be paid, for all coal transported by the said party of the second part for each and every five miles, and every part thereof, the same is transported over the line of road so extended.

"And it is further agreed by and between the parties hereto, that for the transportation of all freight other than coal, and all passengers, from the City of Fort Scott to the terminus of the six miles of road now built by said party of the first part, and from such terminus to the City of Fort Scott, the said party of the second part shall collect and receive the entire freight moneys and fares, fifty per cent. of which said party of the first part shall be entitled to receive and said party of the second part hereby agrees to pay.

" And it is further expressly agreed that in the event that business along the line of said road of the party of the first part, other than the carrying of coal, should be sufficient to induce the party of the first part to desire to operate its said road, then the said

party of the first part shall have the right to cancel and annul this contract, first giving sixty days' written notice of its intention so to do and paying to the said party of the second part all moneys due it for freight advances or otherwise.

"It is also further agreed that in the event of the annulling of this contract and operation of the said road by the said party of the first part, it shall have a right of way for its trains over the track of the said party of the second part between the point of intersection of the two roads and the City of Fort Scott upon such terms as may be reasonable and usual and as may be agreed upon between the parties; and in case the parties are unable to agree upon such terms then each may choose a referee, who in the event of disagreement may select a third to fix such terms, and their decision shall be binding upon both the parties hereto.

"In witness whereof, the said parties have caused these presents to be subscribed, the party of the first part by its president and the party of the second part by its general manager, and have caused their respective corporate seals to be hereunto affixed on the day and year first above written.

FORT SCOTT, SOUTHEASTERN & MEMPHIS RAILWAY COMPANY.
By its President, B. P. McDONALD.
MISSOURI RIVER, FORT SCOTT & GULF RAILROAD COMPANY.
By GEO. H. NETTLETON, *General Manager*."

The injuries to the plaintiff in error occurred through the negligence of the employees of the above-named lessee company in the operation of the leased line. Subsequently the Fort Scott, Southeastern & Memphis Railway Company was consolidated with other companies into the Kansas City, Fort Scott & Memphis Railroad Company, the defendant in error. What became of the Missouri River, Fort Scott & Gulf Railroad Company is immaterial. Under the statutes of this State the new or consolidated company became liable for the obligations of the old or constituent companies. *Berry v. K. C. Ft. S. & M. Rld. Co.*, 52 Kan. 759, 34 Pac. 805. For reasons not necessary to explain, the liabil-

ity of the Fort Scott, Southeastern & Memphis Railway Company to the plaintiff in error was not barred by the Statute of Limitations at the time of the consolidation; nor is the liability of the consolidated company barred, if it ever existed. Did it ever exist? The determination of this question depends upon the interpretation of the lease above quoted, and the effect to be given the statute which authorized it to be made. If, under the statute and the lease, the injury inflicted upon the plaintiff in error was wholly the act of the lessee company, it alone was liable. If on the other hand the injury was wholly or in part the act of the lessor company, it was liable, and its liability has descended upon the defendant in error. The court below held it to have been the act of the lessee company, and in this view we concur.

The lease in question was made under the authority of chapter 92, Laws of 1870, section 2 of which reads:

"Any railroad company in this State existing under general or special laws may lease its road to any other railroad company organized under the laws of this State, or to any railroad company duly organized and existing under the laws of an adjoining state whose line of railroad shall so connect with the leased road as to form a continuous line."

That a railroad company may not lease its line and turn the operation of its road over to another railroad company without legislative authority for so doing may be conceded. It takes to itself a public franchise, and, unless authorized to do so may not decline to perform the duties it has voluntarily assumed. That it may by legislative permission lease its property and put another in the performance of its duties may likewise be conceded, and when in pursuance to the authority conferred an instrument of lease is executed such instrument must be construed, we think, as like instruments between other corporations or between

private individuals. If the authority to lease is general the lease may be general in its terms, and without conditions except such as the parties choose to insert. If the authority to lease be general the lessor may put the lessee wholly and fully in the possession of its road bed and other property for the purpose of exclusive operation by the latter. In the case of the lease in question this was done. Upon the lessee was conferred "the exclusive right to run and operate its trains of cars over and upon the track of the party of the first part." Nowhere in the instrument is there any language limiting this full and complete cession of authority, but there is elsewhere in it language which by strong implication confirms and strengthens the general grant. In pursuance to this instrument the lessor company put the lessee company in the exclusive possession and operation of its road bed, and in the exclusive discharge of its franchise as a public carrier. While thus in possession and operation of the leased road, and in the discharge of the lessor's franchise, the lessee committed the tort in question through the agency of its own train of cars negligently operated by its own employees. Upon what just legal principle, therefore, can the lessor be held liable for the wrong thus wholly committed by another and which it was powerless to prevent? At common law the lessor is not liable for the tenant's negligence in the use of the leased premises, resulting in injuries to another, unless a right of control in such respect is reserved. Wood's Landlord and Tenant, § 539.

If, therefore, the question were determinable upon principles pertaining to lessors and lessees as individuals, the plaintiff in error could have no cause of complaint. It is asserted, however, that the lessor company, having taken upon itself the obligation to

operate a railroad, could not, even under the author-
ity to lease, so far abdicate its franchise as to escape
responsibility for injuries to third persons, occurring
incident to the performance of the duty by its substi-
tuted agency, the lessee company ; that in order to
do so a legislative exemption must be expressed, and
that the mere authority to lease does not imply the
necessary exemption.     The plaintiff in error is mis-
taken.     The exemption need not be expressed ; it
may be implied ; and a general authority to lease is
sufficient to raise the implication.     To hold otherwise
it would have to be that the lessee company was not
a lessee, but was a mere agent of the lessor ; and
indeed counsel for plaintiff in error would have
it thought that such was the case.     The statute, how-
ever, only authorizes the making of leases, not con-
tracts of agency.     The instruments authorized by it
are designated as "leases," and, when an agreement
between two railroad companies is expressed in terms
fit and apt to create the relation of lessor and lessee,
it will be held to be what the statute authorizes — a
lease.     When a lease is made, what reason can exist
for not attaching to it the ordinary common-law con-
sequences of such contracts — liability of the lessee to
third persons for the negligent use of the leased prem-
ises, and non-liability of the lessor when no right of
control over the lessee has been reserved?     The de-
mands of public policy are satisfied and the rights of
third persons secured by the imposition upon the
lessee of all liability incident to the exercise of the
franchise by it, and the demands of what the common
law in such cases esteems to be just are likewise se-
cured by exempting the lessor from liability.     With
the exception of the case of *Logan v. Railroad Co.* (118
N. C. 940), and *Harmon v. Railroad Co.* (28 S. C. 401),
all the authorities are opposed to the contention of
plaintiff in error.

The case of *Heron v. St. P. M. & M. Rld. Co.* (68 Minn. 542), is so instructive upon this question that we quote from it at length :

" 1.  We shall consider first the liability of the St. Paul, Minneapolis & Manitoba Railway Company. There is a conflict of authorities upon the question whether a company which leases its railroad to another company under authority of law is liable for the negligence of the lessee in operating the road under the lease.  Some courts hold that the lessor is liable unless the statute which grants the right to lease expressly exempts the lessor from liability ; that there can never be an exoneration from liability by implication ; while others hold that the lessor is exonerated from liability for the negligence of the lessee in operating the road where the lease is authorized, although the statute authorizing it does not contain any express provision relieving it from liability.  In our opinion, upon both principle and authority, the latter is the better doctrine.  It is unneccessary to review the authorities on the subject, as most of them will be found collated in the text-books.  See 2 Elliott, R. R., § 467, *et seq.*  The reasons in support of this position are well and forcibly stated by Judge Elliott, as follows : ' It must be assumed that in granting the authority to execute a lease the Legislature had in mind former statutes as well as the established rules of the common law.  When power to execute a lease is conferred upon a corporation, the Legislature must, in the absence of countervailing language, be deemed to intend to authorize the execution of such an instrument as the established law regards as a lease.  The law enters as a silent factor into every contract, and hence of every lease it is an important element.  The legal effect of a lease is to transfer for a prescribed period of time the possession and control of the property to the lessee.  In authorizing the execution of a lease the Legislature grants the right to execute and carry into effect such an instrument as divests the lessor of possession and control, and places it in the lessee to the exclusion of the lessor.  The possession of the one party is excluded and that of the other is made com-

plete by legislative sanction. . . . It cannot be doubted that a statute conferring general authority to sell means a complete and effective sale, and upon the same principle it must be concluded that the power to lease, unless qualified and limited by statute, is a power to make a complete and effective lease. A complete and effective lease certainly vests the right of possession, control and management in the lessee, since no other effect can be assigned such a lease without a direct and palpable violation of long and well established principles of law. . . . In granting authority to lease, the Legislature empowers the lessor company to transfer the duty of operating the road to the lessee, and in doing what the Legislature authorizes no rule of public policy is violated. . . . The courts which assert the theory mentioned [ that there must be an express exemption from liability in order to exonerate the lessor ] tacitly assume that in granting authority to lease the Legislature granted something less than an authority to lease. We believe that the only theory that can be defended on principle is that in granting authority to execute a lease the Legislature conferred authority to execute an effective instrument with all the qualities and incidents with which the law invests a lease. If this be true, then the lease does transfer possession and control from the one party to the other for the term of the lease, and the rights and obligations of the parties are such, and such only, as the law annexes to the relation of lessor and lessee.' 2 Elliott, R. R., § 469. The learned author is speaking, as we understand him, solely with reference to negligence of the lessee in the operation of the road, and not attributable to a breach of any public duty of the lessor company ; and we shall only add to what he has said that as to such acts, whether of omission or commission, there is no reason of public policy why the rights and obligations of the lessor and lessee should be held to be different from those which the law annexes to any other lease. We therefore hold that upon the facts alleged the St. Paul, Minneapolis & Manitoba Railway Company is not liable, and its demurrer to the complaint should have been sustained.''    —

The Court further says, pp. 551–2 :

" We start with the proposition that a railroad company is liable for the negligence of its lessees or licensees in the operation of its road, unless it is relieved therefrom by legislative exemption, express or implied.   In case of a lease made with legislative authority, which gives the lessee the exclusive control and possession of the road, we have just held that such exemption is necessarily implied.   The fact that the lease transfers to the lessee this control and possession, thus putting it out of the power of the lessor to interfere with or regulate the operation of the road, is an influential, if not the controlling consideration for holding that this exemption is implied."

Wood's Railway Law, section 490, sums up the authorities thus :

" But where the statute authorizes the lease; the lessee assumes, during the existence of the lease, all the duties and obligations of the lessor, and from the time that it enters into the possession of the road, becomes *solely liable* for all injuries resulting from its management unless it is operating the road in the name of the lessor."

Hutchinson on Carriers ( 2d ed., § 515*b*) says :

"An authorized lease, however, not otherwise providing, will absolve the lessor from the torts of the lessee resulting from the negligent operation and handling of its trains and the general management of the leased road over which the lessee has no control "

2 Elliott on Railroads ( § 468) says :

"As said in the preceding section, some of the cases make a distinction between negligence in the operation of the road and negligence in its construction, and adjudge that the lessor company is not liable for the negligence of the lessee in operating the road. *The text writers generally favor the doctrine that for negligence in operating the road the lessor is not liable.*"

And in section 469 : "Our opinion is that where the lease is executed under the provisions of a statute,

in accordance with its requirements, is made to a company having authority to accept it, and is made in good faith, and not for the purpose of transferring duties and obligations to an irresponsible party, the lessor company is not liable for injuries caused by the negligence of the lessee and not attributable to a breach of any public duty of the company that executed the lease.''

Many cases cited by counsel for plaintiff in error are upon questions of liability of lessor companies for the negligent construction of the road, or the negligent maintenance of it when the duty of maintenance has not been assumed by the lessee. Of this class is the decision of this court in *St. L. W. & W. Rld. Co. v. Curl* (28 Kan. 622). In that case the second division of the syllabus reads thus :

'' In case of a lease of a railway track, a distinction exists as to the liability of the lessor and lessee company between these cases in which the liability arises from the omission of some duty in the construction of the road, and those which arise from negligence or the omission of some duty in the handling of trains and the management of the road.''

Justice Brewer delivered the opinion, and said (pp. 623–4) as follows :

'' Defendant contends that where the statute authorizes the lease by one railway company to another of its track, the lessor company is not responsible for injuries caused by the torts of the lessee company, and in support of this doctrine cites some authorities. To a certain extent this proposition is true : *if the injury results from negligence in the handling of trains, or in the omission of any statutory duty connected with the management of the road, matters in respect to which the lessor company could, in the nature of things, have no control, then the lessee company will alone be responsible ;* but when the injury results from the omission of some duty, which the lessor itself owes to the public in the first instance — something connected with the *building of the road* —

then we think the company assuming the franchise cannot divest itself of responsibility by leasing its track to some other company.''

We are entirely satisfied that the judgment of the court below was right, and it is therefore affirmed.