CASE 103—ACTION TO RECOVER DAMAGES FOR THE DEATH OF PLAIN-
TIFF'S INTESTATE.—MARCH 5.

# McCabe's Admx. v. Maysville & B. S. R. Co., &c.

### APPEAL FROM MASON CIRCUIT COURT.

JUDGMENT REMOVING CAUSE TO UNITED STATES CIRCUIT COURT AND
PLAINTIFF APPEALS. REVERSED.

REMOVAL OF CAUSES—JURISDICTION OF THE FEDERAL COURT—JOINDER
OF RESIDENT DEFENDANT—LEASE OF RAILROAD—AUTHORITY OF
RAILROAD CORPORATION—NEGLIGENCE OF LESSEE—LIABILITY OF
LESSOR.

| 112 | 861 |
| 116 | 154 |
| e116 | 255 |

| 112 | 861 |
| 116 | 154 |
| e116 | 255 |

| 112 | 861 |
| f119 | 142 |

| 112 | 861 |
| 126 | 267 |
| 126 | 268 |
| 126 | 270 |

| 112 | 861 |
| 128 | 742 |

| 112 | 861 |
| s136 | 675 |

Held: 1. A motion for the removal of a cause to the federal court must
be overruled unless the petition for removal shows the existence
of a controversy which is wholly between citizens of different
States, and which can be fully determined as between them,
that being the jurisdictional fact upon which the right of remov-
al depends.

2. A removal can not be had by a non-resident defendant where a
resident defendant is properly sued jointly with him.

3. As statutes are not presumed to be intended to have effect
beyond the jurisdiction of the State, Act January 22, 1858
(2 Stant. Rev. St. p. 548), authorizing "railroad companies in
this Commonwealth" to contract "for the leasing of the road of
one company to another, provided the roads so leased shall be
so connected as to form a continuous line," applies only to do-

mestic corporations, as the statute provides how the meeting of stockholders to approve such contracts shall be called, and it can not be presumed that such a provision was intended to regulate the proceedings of corporations in other States.

4. A provision of the charter of a railroad company "that whenever' any portion of said railroad shall be completed and in readiness for business, such portion thereof may be put in operation under authority of the board of directors on such terms for the use thereof as the board of directors may prescribe," not exceeding certain maximum rates, with a proviso that "they may make special contracts for special services on such terms and conditions as the parties thereto may agree upon," did not authorize the corporation to lease its road, as such charters are to be strictly construed.

5. A provision in the charter of a railroad corporation empowering the corporation to "make contracts with individuals, corporations and other railroad companies for the building, completion and operating of said road or any part thereof," empowered the corporation to lease its road, but not so as to relieve it from liability for the negligence of the lessee in the operation of a train whereby a person on the track was struck and killed.

A. E. COLE & SON, ATTORNEYS FOR APPELLANT.

We submit that the court erred in directing this case to be transferred to the federal court for the following reasons:

1. The petition for removal does not allege that the lessee corporation, C. & O. R. R. Co., has power to take; such power being as essential to a valid lease as the power to transfer. L. & N. R. R. Co. v. Breeden's Admr., 23 R., 1029; Thomas v. West Jersey R. R. Co., 111 U. S., 71; Gibbs v. Consolidated Gas Co., 130 U. S., 396; Central Trans. Co. v. Pullman Palace Car Co., 139 U. S., 34; Penn. R. R. Co. v. St. L., &c. R. R. Co., 118 U. S., 290; Oregon Ry. Co. v. Oregonian Rep. Co., 130 U. S., 1; Ricketts v. C. & O. Ry. Co., 7 L. R. A., 354.

2. The validity of the lease in question involving a construction of the State Constitution and the statutes, presents a question upon the merits of the case which should be determined by the State courts. C. & O. R. R. Co. v. Dixon, 179 U. S., 131; L. & N. R. R. Co. v. U. S. Waugelin, 132 U. S., 529; Tioga R. R. Co. v. Blossburg, &c. R. R. Co, 20 Wall (U. S.) 137.

3. The liability of the Maysville & B. S. R. R. Co. for the injury to appellant's intestate, exists in the case at bar unless it can be shown to possess *both* the express power to lease and express exemption from liability conferred by the State; in the

McCabe's Admx. v. Maysville & B. S. R. R. Co., &c.

absence of either it will be liable. Hanlon v. Phila. West Chester Turnpike Road Co., Am. Neg. Rep., vol. 3, page 609; Van Steuben v. R. R. Co., 178 Pa. St., 374; 35 Atl., 992; Nelson v. R. R. Co., 26 Vt.; 721; R. R. Co. v. Brown, 17 Wall, 450; Rapalje & Mack's Railway Digest, vol. 6, p. 203, sec. 13; L. & N. R. R. Co. v. Breeden's Admx., 23 Ky., 1028; Hukill v. Maysville & B. S. R. R. Co., 72 Fed. Rep., 745; Arrowsmith v. D. R. R. Co., 57 Fed. Rep., 165; 44 L. R. &c., 737-750.

4. If such exemption ever existed it has been repealed by sec. 203, Ky. Constitution.

5. Since the petition for removal states that appellee C. & O. R. R. Co. is a foreign corporation and denies that it has filed its articles of incorporation and otherwise complied with section 211, Kentucky Constitution, and section 841, Kentucky Statutes, the appellees are estopped to assert the validity of the lease in question until there has been a compliance with these requirements; the status of the C. & O. R. R. Co. until then, being that of a trespasser so far as the rights of the public are concerned.   Clark on Corp., p. 626-9 (especially 24 L. R. A., page 315 and notes) Stevenson v. Miller, 2 Litt. 310; Hawley v. Mason, 9 Dana, 35; Augusta Bank v. Earle, 13 Pet., U. S., 592; Am. Christian Union v. Yount, 101 U. S., 356; Gill v. Ky. Gold Mining Co., 7 Bush, 90; Power to impose terms implies power to revoke permission, 94 U. S., 732; 143 U. S., 314.

6. The petition for removal does not controvert the fact that the Maysville & B. S. R. R. Co., having simply *general* power of eminent domain took possession of the streets of the city of Maysville, on which the injury occurred, under a void ordinance, its construction and operation being therefore without authority and is a nuisance.   Com. v. Frankfort, 92 Ky., 49; Elliott on Roads and Streets (2d ed.) sec. 802, 873; Louisville City Ry. Co. v. Louisville, 8 Bush, 415; Ruttles v. City Covington, 10 S. W., 644.

7. Since, upon authority of Winston's Admr. v. Ill. Central Ry. Co., 65 S. W., 15, plaintiff had a good cause of action against the M. & B. S. R. R. Co.; therefore the allegations in the petition for removal as to fraudulent joinder are mere conclusions of the pleader and negatives in point of law, by facts expressly admitted. Vol. 18 Ency. Pl & Pr. p. 292; Warax v. Cin., &c. R. R. Co., 72 Fed. Rep., 640; Lou. Ry. Co. v. Waugelin, 132 U. S., 603; C. & O. Ry. Co v. Dison (Ky.) 1898, 47 S. W., 615; Hukill v. M. & B. S. R. R. Co., 72 Fed. Rep., 748; Deere v. Chicago R. R. Co., 85 Fed. Rep., 76.

8. The State court is at liberty to determine for itself whether

or not on the face of the record including the petition and bond for removal, it appears that the removal had been effected. C. & O. Ry. Co. v. Venable, 63 S. W., 36; Powers v. C. & O. Ry. Co., 169 U. S., 101; Adams Ex. Co. v. Milton, 11 Bush, 49; 100 U. S., 474; Stone v. Sargent, 129 Mass., 503; Jackson v. Alabama G. P. R. R. Co., 58 Miss., 651; Chandler v. Coe, 56 N. H., 187.

W. H. WADSWORTH, ATTORNEY FOR APPELLEE.

In this case two distinct grounds for removal were set out and relied on. *First.* Diversity of Citizenship. *Second.* Fraudulent Joinder.

On the first question it is conceded that the court will be governed by the allegations of the petition and amended petition alone, but in the light of the law and the statutes relating to the same of which the court must take judicial notice.

Upon the second ground we claim that while it is true one has a right to allege a joint cause of action, and his motive will not ordinarily be questioned, yet if he falsely and fraudulently makes allegations, which support that right, but which he knew or should have known were untrue and that the same were made for the sole purpose of defeating a removal, without any intention upon the plaintiff's part to prove them, then the plaintiff's motive will be inquired into.

And we claim that these questions as to fraudulent joinder and sham defendants and the hearing of the proof upon the same are for the federal court, and not for the State court.

The petition for removal proceeded upon the theory that the effect of complying with section 841, Kentucky Statutes, while it might make the Virginia corporation a Kentucky corporation for some purpose, did not have the effect to make it a citizen of Kentucky or a corporation of Kentucky, so as to deprive it of the right to remove this case to the federal court, and further that the plaintiff's petition did not state any cause of action against the Maysville & Big Sandy R. R. Co., and that the allegations of the pleadings that the lease and transfer were *ultra vires*, and void, were false and known to be false by the plaintiff when he made them. And even if it be conceded that there was no authority to make this lease and transfer, the petition and amended petition did not state a joint cause of action against the M. & B. S. R. R. Co and the C. & O. Ry. Co.

There is no allegation that the C. & O. Ry. Co. is unlawfully operating the road, and the pleadings without being construed most strongly against the pleader is susceptible of but one

McCabe's Admx. v. Maysville & B. S. R. R. Co., &c.

construction and that is the lease by the Maysville & B. S.
R. R. Co. under the laws of Kentucky was *ultra vires* and void.

The act of February 13, 1890 of Virginia gives the C. & O.
Ry. Co. complete and ample authority to make and accept
such a lease.    But if appellant's contention is correct then the
authority of the C. & O. Ry. Co., to accept this lease is directly
put in issue by the petition for removal on the ground of fraud-
ulent joinder, because it is alleged in that petition, that the al-
legations of plaintiff's petition, "that under the laws of Ken-
tucky said lease and transfer was and is illegal *ultra vires* and
void," is false and untrue and known to be so by plaintiff
when made.    And the evidence upon this allegation of the pe-
tition for removal, we have seen, must be heard in the federal
court.

## AUTHORITIES CITED.

Hess v. Buffalo, &c. R. R. Co., 29 Barb., (Supreme Court Re-
ports, New York), 391; McCormick v. Ill. Cent. R. R. Co., 100
Fed. Rep., 250; Hukill v. M. & B. R. R. Co., 72 Fed. Rep., 750;
Louisville, &c. Ry. Co. v. Wangelin, 132 U. S., 601; Dow v.
Bradstreet, 46 Fed., 825; Prince v. Ry. Co., 98 Fed., 1; McCor-
mick v. Ry. Co., supra; Kansas, &c., Ry. Co. v. Daugherty,
138 U. S., 298 and cases cited; Session Acts of Kentucky, 1850,
Session Acts of Kentucky, 1851, Session Acts of Kentucky,
1880, Session Acts of Kentucky 1867, vol 1, page 75; Ap-
pendix, (grants from City of Maysville); Revised Stats. of
Ky., vol. 2, page 548; Hancock v. R. R. Co., 145 U. S., 412;
L. & N. R. R. Co. v. Comth., 97 Ky., 675; Session Acts of
Ky., 1866, vol. —; Kentucky Statutes, sec. 769; Session Acts
of Kentucky, 1854, vol. —; Railway Companies v. Bridge Co.,
131 U. S., 385; Arrowsmith v. Railroad Co., 57 Fed. Rep.,
165 and cases cited; L. & N. R. R. Co. v. Breeden's Admx., 23
Ky. Rep., 1029; Harper v. Railroad Co., 90 Ky., 359; Hanlon
v. Turnpike Co., Am. Neg. Rep., vol. 3, 609; Van Steuben v.
Ry. Co., 178 Pa. St., 374; Nelson v. Railroad Co., 26 Vermont,
721; Railroad Co. v. Brown, 17 Wall, 450; Hukill v. M. & B.
S. R. R. Co., supra, 745; Arrowsmith v. Railroad Co., supra,
72, 178 and 179; Constitution of Kentucky, sec. 203; Warax
v. Railroad Co., 72 Fed., 642; Hukill v. Railroad Co., supra,
745; Perkins v. Stein & Co., 94 Ky., 433; C. & O. Ry. v. Dixon,
179 U. S., 131; C. & O. Ry. Co. v. Dixon 104 Ky., 608; Win-
ston's Admr. v. Ill. Cent. Ry. Co., 65 S. W., 13; Beuttel v.
Chicago, M. & St. Ry. Co., 26 Fed., 50; Railway Co. v. James,
161 U. S., 545; Taylor's Admr., &c. v. Ill. Cent. Ry. Co., 89
Fed., 119.

Opinion of the Court by JUDGE HOBSON—Reversing.

Appellant, Emma R. McCabe, as administratrix of Peter McCabe, deceased, filed this suit in the Mason circuit court against appellees, the Maysville & Big Sandy Railroad Company and the Chesapeake & Ohio Railway Company, to recover damages for the death of her intestate, who, she alleged, was killed in September, 1901, while walking along Third street in the city of Maysville, by an engine and train of the Chesapeake & Ohio Railway Company, by reason of the negligence of its agents in charge thereof, as well as the negligence of the Maysville & Big Sandy Railroad Company in permitting it to use the track, which was the property of the latter company. She alleged that after the building and completion of its road, and more than twelve months before the injuries to her intestate, the Maysville & Big Sandy Railroad Company leased and transferred its entire line of road to the Chesapeake & Ohio Railway Company, and that the latter has since that time been in the exclusive possession and control it; that by the laws of Kentucky the lease and transfer were *ultra vires* and void; that in December, 1893, pursuant to section 211 of the Constitution of Kentucky, and section 841, Kentucky Statutes, the Chesapeake & Ohio Railway Company became a corporation, citizen, and resident of this State by filing in the office of the secretary of State, and in the office of the railroad commission, copies of its articles of incorporation, and that thereupon a certificate of said incorporation was issued to it by the secretary of State. She further alleged that the railroad track was laid in Third street under an ordinance from the city authorities; that the railroad track took up the whole street, so as to render it unfit for travel by wagons or vehicles; that the city authorities were without power to authorize such a use of the street; and that

the ordinance was void, and the operations of the trains on it was illegal. She prayed judgment for $25,000. The Chesapeake & Ohio Railway Company filed its petition to remove the case to the circuit court of the United States, alleging that it is a corporation created under the laws of the State of Virginia, and a citizen of that State, and of no other; that the Maysville & Big Sandy Railroad Company is not a proper party to the action, and was made a party to it for the sole purpose of preventing a removal of the case to the United States court; that no cause of action is shown in the petition against the Maysville & Big Sandy Railroad Company; that it had authority of law to make the lease referred to, and is insolvent. It is specially pleaded in the petition that, by virtue of the charter and amendments thereto of the Maysville & Big Sandy Railroad Company, and particularly of the act of February 17, 1866, entitled "An act authorizing the sale of the Maysville & Big Sandy Railroad, and providing for the organization of a new company under its charter to construct said road" (Acts 1865-66, p. 664), and of the general laws of the State of Kentucky, that company had full power and authority to make the lease referred to. On this petition the court, over the plaintiff's objection, ordered the case to be removed to the federal court, and the plaintiff prosecutes this appeal.

In Powers v. Railroad Co., 169 U. S., 92, 18 Sup. Ct., 264, 42 L. Ed., 673, the United States supreme court said: "A petition for removal, when presented to the State court, becomes part of the record of that court, and must doubtless, show, taken in connection with the other matters on that record, the jurisdictional facts upon which the right of removal depends; because, if those facts are not made to appear upon the record of that court, it is not bound or

authorized to surrender its jurisdiction, and, if it does, the
circuit court of the United States can not allow an amend-
ment of the petition, but must remand the case." It was
the duty, therefore, of the court below, when the petition for
removal was presented, to determine whether the jurisdic-
tional facts upon which the right of removal depended ap-
peared in the petition, and, if they did not appear, to over-
rule the motion for the removal of the case.    On appeal
from that judgment the same duty devolves upon this court.
Under the act of Congress the jurisdictional facts to sus-
tain removal are that "there shall be a controversy which is
wholly between citizens of different States and which can
be fully determined as between them." It has been held
that in a suit against two defendants jointly liable, where
one of them is a citizen of the State and the other a citizen
of another State, if they are properly sued jointly, a re-
moval can not be had by the non-resident defendant. Rail-
way Co. v. Dixon, 179 U. S., 131, 21 Sup. Ct. 67, 45 L.
Ed., 121. The common-law distinctions between the differ-
ent forms of action have been abolished by our Code of
Practice, and all persons who are liable for a wrong may
now be sued jointly in this State in an action to recover
for negligence. A railroad company is given by the State
certain franchises, and thereby assumes certain burdens.
These it can not transfer to another without legislative au-
thority, so as to exempt itself from responsibility for the
torts of its transferee. The Maysville & Big Sandy Rail-
road Company was therefore liable to appellant jointly with
the Chesapeake & Ohio Railway Company, if the transfer
was unauthorized, and, in this event, the suit against the
two companies jointly might be properly maintained. To
hold otherwise would be to require the plaintiff to prose-
cute two actions, although each of the defendants was alike

liable to him. The question then to be determined is, did the petition for removal show that the controversy was wholly between the plaintiff and the Chesapeake & Ohio Railway Company, and that the Maysville & Big Sandy Railroad Company was not a proper party to the action? Section 203 of the State Constitution is in these words: "No corporation shall lease or alienate any franchise so as to relieve the franchise or property held thereunder from the liability of the lessor or grantor, lessee or grantee, contracted or. incurred in the operation, use or enjoyment of such franchise or any of its privileges." The franchises of a corporation are its property. The declaration that these in case of a lease or alienation shall not be relieved from the liability of the lessor or grantor, lessee or grantee, contracted or incurred in the use of the franchise, or any of its privileges, is, in substance, a declaration that the corporation shall not be relieved of such liability; for its existence is inseparable from all of its franchises. Under this section, therefore, no lease made by a corporation can exempt it from liability for the wrongs of its lessee. If the lease in question was made after the adoption of the Constitution, it would not exempt the lessor from liability. The date of the lease is not shown in the record, but if it was made before the adoption of the Constitution the result is the same. An act of the General Assembly approved January 22, 1858, entitled "An act to authorize railroad companies to make certain contracts with each other," is relied on. But this act only refers to "railroad companies in the Commonwealth," or domestic corporations. The act is in these words (see 2 Stant. Rev. St. p. 548): "That all railroad companies in this Commonwealth shall have power and authority to make, with each other, contracts of the following character: 1. For the consolidation of

either the management, profits, or stock of any two or more companies, the roads of which are or shall be so connected as to form a continuous road, either temporarily or permanently.  2. For the leasing of the road of one company to another, provided the roads so leased shall be so connected as to form a continuous line.  3. For the completion in whole or in part, of the unfinished road of any company. 4. For giving a common name and style to any continuous road belonging to two or more companies, provided, however, that all such contracts shall be approved by a majority, in interest, of all the stockholders in each of the contracting companies, at some stated or called meeting of the same." Section 2: "That the called meetings of stockholders, provided for in the first section, shall be called by the president and directors of the company, and notice of the time and place thereof, and of the purposes of such meeting, shall be advertised in one or more newspapers of general circulation in the county where the principal office of such company is then kept, for at least two weeks before such meeting."  In the construction of statutes it is a cardinal rule that they are not presumed to be intended to have effect beyond the jurisdiction of the State.  The second section of the act can, therefore, have no reasonable application to foreign companies, for it can not be presumed that the Legislature intended to regulate the proceedings of the president, directors or stockholders of such companies or advertisements to be given in other States. Taking this section in connection with the opening words of the first section, "All railroad companies in this Commonwealth," we see no room for doubt that the Legislature intended to confer these privileges only on domestic companies.

As to the power of the Maysville & Big Sandy Railroad

Company to make the lease, we are also referred to the fol-
lowing provision in its charter (Act Nov. 25, 1851, sec. 8):
"Sec. 8.   That whenever any portion of said railroad shall
be completed and in readiness for business, such portion
thereof may be put in operation under authority of the
board of directors on such terms for the use thereof as the
board of directors may prescribe, not exceeding the maxi-
mum rates authorized by the fifteenth section of the act in-
corporating the Maysville & Lexington Railroad Company;
provided, they may make special contracts for special ser-
vices on such terms and conditions as the parties thereto
may agree upon."   Acts 1851-52, p. 390.   We do not see
that this section goes further than to authorize the opera-
tion of the road under authority of the board of direc-
tors.     The rule is that charters of this sort are strictly
construed.   We are also referred to the following provis-
ion (Act Feb. 17, 1866, sec. 3; see Acts 1865-66, p. 664).
"The purchaser or purchasers at any such sale after the
same has been ratified and approved by said court shall
in virtue thereof be invested with the title to said road
and all its franchises and chartered privileges as fully and
completely as if the same had been originally granted to
them.   They shall have power to reorganize the company
under its charter; and for the purpose of its charter open
books and receive and collect subscriptions of stock to said
company, make contracts with individuals, corporations
and other railroad companies for the building, completion
and operating of said road or any part thereof."   When
this statute was passed the road was not completed; the
purpose of the provision was to enable the company to
complete and operate the road.   To this end it was empow-
ered to "make contracts with individuals, corporations and
other railroad companies for the building, completion and

operating of said road or any part thereof." Thus power was granted it to make the contract with the Chesapeake & Ohio Railroad Company above referred to; but no exemption was granted from any liabilities which attached to it, and such an exemption, as against the public, can not be implied. While there is some conflict of authority, we think the great weight supports this conclusion. In Harmon v. Railroad Co., 28 S. C., 404, 5 S. E., 835, 13 Am. St. Rep., 686, the court said: "The circuit judge seems to rest his conclusion upon the ground that, inasmuch as under the charter of the defendant company it has power to lease its road, it follows necessarily that when the road is leased the company is released from all its obligations to the public and to individuals, and these obligations then rest solely upon the lessee. We can not accept this view. It rests upon the idea that, inasmuch as the defendant company incurs these obligations in exchange, as it were, for the chartered rights and privileges conferred by the Legislature, when such rights and privileges are transferred to another by the consent of the Legislature, the corresponding obligations are likewise transferred to such other person or corporation. This, at first view, seems plausible, and is the view adopted in some of the States. But it rests upon the unfounded assumption that the defendant company has transferred all of its chartered rights and privileges to the Richmond & Danville Railroad Company. We understand the testimony as tending to show, and the concession of counsel to be, simply, that the defendant company has leased its road to the Richmond & Danville Railroad Company, and not that it had transferred all its chartered rights and privileges to that company. On the contrary, this very case necessarily implies that the defendant still maintains its corporate organization and existence,

and instead of running its road itself directly has bargained with another company to run it for a compensation, as we must suppose.   The defendant company, therefore, in reality still enjoys the benefits of its charter, and can not be permitted to escape its corresponding obligations." In Driscol v. Railroad Co., 65 Conn., 254, 32 Atl., 354, the court said: "A grant to a corporation of a right to lay out, construct, and operate a railroad is the grant to the corporation of the capacity to exercise a portion of the powers of sovereignty for the purpose of making pecuniary profit to itself.   This is its franchise.   Such grants are never made except at the request of the corporation.   In return, the corporation is held to have promised to pay just damages to any person injured by any want of care in using the right so granted.   As the grant is of a public right, in which every one of the public is a sharer, so the promise is to each one of the public.   A due regard for the public rights obviously requires that a corporation which has asked for and received such a grant shall not be absolved from its promises except by an act of the Legislature to that effect so distinct and unequivocal as not to be open to mistake.   Nothing should be left to inference." In Braslin v. Railroad Co., 145 Mass., 68, 13 N. E., 65, the court said: "The sanction of the Legislature was given to the contract as made by the parties, but added nothing by way of exemption from the primary responsibility of the lessor. . . .   It was under a positive duty and obligation to the public, and the consent of the Legislature to the making of the lease did not imply a discharge from the duty and obligation. . . .   Where a corporation seeks to escape from the burden imposed upon it by the Legislature, clear evidence of a legislative assent to such exoneration should be found."   In Logan v. Railroad Co., 116

N. C., 946, 21 S. E., 959, the court said: "After conferring upon a corporation the right of eminent domain, with many other special privileges which the Legislature is empowered to grant only in consideration of its duty and obligation to serve the people by affording them the means of safe as well as speedy transportation for themselves and their property, the State can not be held to have abdicated its right to protect the patrons of the road who are under its care by the strained construction of a naked power to lease. Such a power does not carry with it the authority to the lessor to absolve itself and transfer its duties and obligations to another, whether able or unable to respond in damages for its wrongs or defaults." These were all suits against the lessor where the lease was authorized by statute. See, to the same effect, Balsley v. Railroad Co., 119 Ill., 68, 8 N. E., 859, 59 Am. Rep., 784; Singleton v. Southwestern R. R., 70 Ga., 464, 48 Am. Rep., 574; Tillett v. Railroad Co., 118 N. C., 1031, 24 S. E., 111; Railroad Co. v. Morris, 68 Tex., 59, 3 S. W., 457; Chollette v. Railroad Co., 26 Neb., 169, 41 N. W., 1106, 4 L. R. A., 135; Parr v. Railroad Co., 43 S. C., 197, 20 S. E., 1009, 49 Am. St. Rep., 826; Pennsylvania Co. v. Ellett, 132 Ill., 654, 24 N. E., 559; Stephens v. Railroad Co., 36 Iowa, 327; Bower v. Railroad Co., 42 Iowa, 546; Railroad Co. v. Lee, 71 Tex., 558, 9 S. W., 604.

In some States a distinction is made between injuries resulting from the negligence of the lessee alone and those resulting from the failure of the lessor to discharge some duty imposed by law upon him, where the lease is authorized by statute, and the lessor is only held liable for the latter. Thus the lessor is held responsible where cattle stray upon the track and are injured while the road is operated by the lessee by reason of the failure to fence the

track as required by statute, or where a person is injured by reason of the improper construction of a station house too near the track, or an injury results from a failure to put in sufficient cattle guards, or there is a failure to transport persons or property as required by the charter of the lessor. Heron v. Railway Co., 68 Minn., 542, 71 N. W., 706; Lee v. Railroad Co., 116 Cal., 97, 47 Pac., 932, 38 L. R. A., 71, 58 Am. St. Rep., 140; Bean v. Railroad Co., 63 Me., 295; Nugent v. Railroad Co., 80 Me., 62, 12 Atl., 797, 6 Am. St. Rep., 151; Lakin v. Railroad Co., 13 Or., 436, 11 Pac. 68, 57 Am. St. Rep., 25.    After citing a number of these cases in his note to Lee v. Railroad Co. (Cal.) 47 Pac., 932, 38 L. R. A., 71, 58 Am. St. Rep., 152, Freeman, commenting on them, says: "If it be true, as the decisions with substantial unanimity admit, that a lessor railway remains liable for the discharge of its duties to the public unless expressly exempted therefrom by statute, it seems difficult to conceive its absence of liability in any event, except perhaps where the plaintiff is suing upon an express contract made with him by the lessee corporation. Is it not as much a public duty on the part of a railway corporation to operate its trains without negligence as it is to receive all freight offered for transportation, or to carry all passengers who offer to pay the regular rates, or to keep its track and station houses in safe condition? In truth we do not know of any duties of a railway corporation which are of a private character. . . ." There are cases in which the lessor had been held not responsible for injuries to the servants of the lessee by reason of the lessee's negligence. Railroad Co. v. Washington, 86 Va., 629, 10 S. E., 927, 7 L. R. A., 344; Hukill v. Railroad Co. (C. C.) 72 Fed., 745.    These cases rest on the idea that the duty owed to the servant by his employer grows out of

the contract of service, which is voluntarily entered into by the servant, and that he does not stand to it like the public. In addition to these there is a line of cases holding the lessor not responsible for any acts of the lessee, on the ground that the legislative authority to lease constitutes the lessee *quo ad hoc* the owner of the property, and substitutes him for the lessor. Miller v. Railroad Co., 125 N. Y., 118, 26 N. E., 35; Caruthers v. Railroad Co., 59 Kan., 629, 54 Pac., 673, 44 L. R. A., 737, and cases cited.

Upon principle and the weight of authority we are of opinion that the Maysville & Big Sandy Railroad Company is liable to appellant. The obligation to fence the track for the protection of stock, or to receive passengers or freight, or carry them safely, is no more a duty of the lessor imposed upon it by its charter than its duty to avoid injury to the traveling public in the discharge of its functions, as in this case. By its acceptance of the franchises conferred by the State the corporation assumed the corresponding burdens thereby imposed. These franchises it could not transfer to another without distinct legislative authority. The grant of power to lease its property is one thing; the grant of absolution from its responsibility is another, and is not to be inferred from a mere power to lease the road, where the corporation still retains its existence and the enjoyment of its franchises in the rents. For such grants are strictly construed, and, as against the public, are never extended by construction. In the case before us there is only a grant to the lessor of power to contract for the operating of the road. The company enjoys all its franchises in the fruits of the contract. There is nothing in the provision to show that the Legislature had in mind authorizing the company to divest itself of its franchises, or permitting it, while enjoying them or their fruits, to be acquit of re-

sponsibility for their abuse, without regard to the financial ability of the lessee or his amenability to suit. In Harper v. Railroad Co., 90 Ky., 359 (12 R., 333) (14 S. W., 346), the question was not elaborated, and it is apparent from the opinion that only the question of jurisdiction was really considered by the court; for it does not appear from the facts stated that the lease in that case was authorized by statute, or under what provision of law it was made.

It is unnecessary for us to pass upon section 211 of the Constitution and section 841 of the Kentucky Statutes, and determine whether appellee can accept citizenship in this State, and so take all its advantages and at the same time plead that it is a non-resident of the State.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

Judges O'Rear and DuRelle, dissent. Judge Burnam not sitting.