(41 South. 560.)

No. 15,903.

HAMILTON v. LOUISIANA & N. W. R. CO. et al.

(June 18, 1906.    Rehearing Denied June 26, 1906.)

1. RAILROADS — DEFECTIVE TRACK — LIABILITIES.

Where a railroad company granted to a lumber company the privilege of running a logging train on its roadway, and the train was derailed and the conductor injured by the giving way of a defective bridge, the railroad company is liable in damages.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 817, 818.]

2. MASTER AND SERVANT—INJURY TO SERVANT.

In such a case, the lumber company, not guilty of any default or negligence, and with no supervision or control over the track or knowledge of its condition, is not liable for the injuries sustained by its conductor, who had full knowledge of the situation when he accepted the employment.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 171; vol 41, Cent. Dig. Railroads, §§ 817, 827.]

(Syllabus by the Court.)

Appeal from Third Judicial District Court, Parish of Claiborne; James Edward Moore, Judge.

Action by Thomas P. Hamilton against the Louisiana & Northwestern Railroad Company and Athens Lumber Company. Judgment for plaintiff, and defendants appeal. Reversed and dismissed as to lumber company, and, as thus amended, affirmed.

John A. Richardson, for appellant Louisiana & N. W. R. Co.  Enos Howard McClendon, for appellant Athens Lumber Co. John C. Theus, for appellee.

LAND, J.  This is a suit for damages for personal injuries alleged to have been occasioned by the wreck of a log train in charge of plaintiff as conductor, by reason of the giving way of defective bridge on defendant's line.

Plaintiff was employed by the lumber company, which was operating a log train on defendant's track under the terms of a written contract between the parties defendant.

There was a verdict and judgment in favor of the plaintiff for $6,000 against the defendants, in solido, and they have appealed. The fight is a triangular controversy; each defendant contending that, if plaintiff is entitled to recover anything, the other is liable.

Plaintiff alleges that on or about June 26, 1905, he was in the employ of the Athens Lumber Company, as conductor of a log train which was being operated over the line of the defendant railroad company, under a contract, the terms and conditions of which were unknown to the petitioner at the time.

The petition further alleges that, on said date, while said train was being properly operated, it was derailed by the giving way of a rotten and defective bridge, and petitioner was thrown violently to the ground and his right arm was crushed, and was amputated a few hours later.

The petition charges that it was the legal duty of said railroad to keep its tracks and bridges in sound and safe condition, and that the same duty devolved upon the lumber company as far as its employés were concerned, and that their failure to perform such duty caused the injury complained of.

In February, 1905, the defendants entered into a written contract by virtue of which the lumber company acquired the right to operate a locomotive on the railroad track for the purpose of hauling logs from such points on the line as the lumber company might desire to its mill at or near Athens, on certain specific conditions.

It was stipulated that the engineer and conductors employed should be approved by the railroad company, and discharged at its request; that the locomotive should not come upon the track of the railroad company, either with or without its train, without the authority of its train master; and that the engineer or conductor should report by telephone the movements of the log train to said

official from the time of going on the line to the time of leaving it and locking the switches.

It was further stipulated as follows, to wit:

"The party of the second part (the lumber company) is to be responsible for all damages that may occur in consequence of its operating its locomotive or train on the line of the party of the first part (the railroad company), except as hereinafter provided.

"The party of the second part will be responsible for all personal injuries to its own employés, to the employés of the party of the first part or to outside persons, which may result from the operation of its locomotive or train, and which may become a liability on the party of the first part.

"The same conditions apply in regard to loss of stock or from fire resulting from the use of its engine, also for all damages to track or the rolling stock of the party of the first part from any accident, wreck, or collision on the track. But, when the locomotive or train of the party of the second part is out with the authority of the train master of the party of the first part, and any collision occurs, then the question of responsibility will be a question of which party is in fault."

It was further stipulated that the lumber company should make a satisfactory bond for the performance of the conditions of the contract and to indemnify the railroad company "for any loss or damage occurring through the nonobservance of it."

It was further stipulated that no persons were to be allowed on the log train except employés actually on duty, and that the lumber company should have the privilege of transporting feed and supplies for necessary teams and camps.

It was further stipulated that the object of granting the concession to run a locomotive and train on the railroad track was to enable the lumber company to haul logs from points on the main line, wherever they might be purchased, and that certain rates according to distance should be paid by the lumber company for the use of the line for hauling logs.

The contract was made for the term of 10 years, and contains other stipulations which need not be recited. The railroad company filed an exception of no cause of action and a motion for a severance, both of which were overruled.

The railroad company then answered, pleading the general issue, but admitting that plaintiff was injured while working as a conductor on a log train belonging to or being run by the Athens Lumber Company on the respondent's track, being at the time in the employ of said lumber company.

Respondent specially denied that it had any control over said log train or the conductor thereof, and averred that it was not responsible, by contract or otherwise, for the injury complained of by the plaintiff.

Respondent pleaded in the alternative that plaintiff was an expert railroad man, both as to train service and tracks, bridges, etc., and, in accepting employment under the lumber company, assumed all the risks necessarily attending that position of which he was aware or could have known by proper care and prudence.

Respondent finally pleaded contributory negligence, without specifying any particular faults of which plaintiff had been guilty.

The lumber company answered and admitted the injury as alleged in the petition, but averred that, under the contract referred to therein, it was not responsible to the knowledge of plaintiff, for damages occasioned by the defective bridge, and in the alternative charged that the injury complained of was the result of plaintiff's own negligence. The proximate cause of the accident was the giving way of the railroad bridge.

A number of witnesses for plaintiff testified that some of the timbers were rotten. The same fact is testified by witness for the railroad company.

A civil engineer was sent by said company to the scene of the accident, and he made no examination of the structure. There is no assignable reason for the giving way of bridge, save the decay of the timber.

The evidence is conflicting as to the speed

of the train at the time and as to the weight of the car loads of logs.

All the men on the train testify that there was nothing unusual either in the speed or in the loading.

The rotten bridge accounts for the accident, and the evidence did not satisfy the jury and does not satisfy us that the accident would not have happened if the speed has been less or the load lighter. The objection that the conductor was riding on a loaded car and not on the locomotive is without merit.

Where a railroad bridge collapses, the burden of proof is on the company to show the highest degree of practical care and skill in the construction of the bridge and its inspection from time to time to discover defects. Jackson v. Railway Co., 114 La. 981, 38 South. 701.

This burden has not even been attempted to be discharged in this case beyond the vague testimony of a foreman of a section gang that he looked at the structure and it seemed all right.

The question in the case is as to the legal liability of the defendants, or either of them, for the injuries suffered by the plaintiff.

As to the railroad company, the plaintiff was neither a passenger nor an employé, but was lawfully on the train as an employé of the Athens Lumber Company, which had a contractual right to the use of the track.

The authorities make a distinction between the case where a lease of a railroad is authorized by statute and the case where it is not.

In the former, the lessor is not responsible for injuries resulting from the negligent operation of the leased line by the lessee company, but, where the injury results from the omission of some duty which the lessor owes to the public, its responsibility cannot be shifted by leasing its tracks to another company.

Where a lease is not authorized by statute, the corporation to which the franchise was granted is liable for all injuries resulting from the negligent operation of the road by its lessee, as well as from its omission of some duty owing to the public. See Caruthers v. Railroad Co., 59 Kan. 629, 54 Pac. 673, 44 L. R. A. 737, and notes.

The same principles apply to "running privileges or arrangements." Id., notes 44 L. R. A. 750–752.

In Muntz v. Railroad Co., 111 La. 423, 35 South. 624, 64 L. R. A. 222, 100 Am. St. Rep. 495, this court held that a railroad corporation is liable for injuries to persons caused by the wrongful or negligent operation of the cars upon the road, whether operated by itself or another corporation to which it has leased the franchise.

We see no possible escape from the conclusion that the defendant railroad company is liable to plaintiff for its failure to discharge the public duty of maintaining safe bridges on its line. The fact that the plaintiff was the employé of the lessee company makes no difference. Caruthers' Case, supra, page 753, of 44 L. R. A. note 7.

The lumber company, under its "running contract," did not undertake to keep the track and bridges of the railroad company in good condition, nor did it assume liability for damages resulting from the faults of the railroad company.

The lumber company employed the plaintiff to operate a train over the railroad track of its grantors. Plaintiff knew that his employer had no control or supervision over the bridges of the railroad company, and had no means of knowing their conditions save through the observation and reports of plaintiff and his fellow employés.

The lumber company was guilty of no negligence or fault in the premises. Plaintiff was aware of the situation and accepted the employment, relying on the railroad company to furnish and maintain a safe track, and well knowing that it was not incumbent on the lumber company to inspect or repair bridges or roadbed.

The lumber company did not undertake to furnish the track or keep it in safe condition.

We therefore are of opinion that the verdict and judgment against the lumber company should be reversed.

The verdict is·not assailed as excessive in amount.

It is therefore ordered, adjudged, and de-- creed that the judgment appealed from be annulled, avoided, and reversed, in so far as it is against the Athens Lumber Company, and it is further ordered and decreed that plaintiff's suit and demand against said company be dismissed with costs, and that as thus amended the judgment appealed from be affirmed; costs of appeal incurred by the Athens Lumber Company to be paid by the plaintiff and the remainder by the defendant railroad company.