# MISSISSIPPI CENTRAL R. R. Co. *v.* LOTT.

### [80 South. 277, In Banc.]

1. RAILROADS. *Injury to shipper's employee. Inspection of foreign cars.*

   The general obligation rests upon carriers who furnish cars to shippers to furnish safe and proper cars and to use ordinary care to inspect the cars in an effort to see that they are reasonably safe, and it is not the duty of the shipper to inspect such cars. In such case, it is immaterial that the cars so furnished were furnished as empties by a connecting carrier.

2. RAILROADS. *Personal injury action. Instructions.*

   The instructions in this case as set out in the opinion, were held by the court to be grounded on the implied invitation of the carrier to the servants of the shipper to make proper use of the cars in loading same for shipment, and to state in language approximately correct the proper law of the case, and not to submit to the jury the federal Safety Appliance Act.

3. APPEAL AND ERROR. *Harmless error. Review.*

   In an action by the employee of a shipper against a railroad company for injuries caused by a defective grabiron, while loading a railroad car, the court held that an instruction using the words "by defendant's negligence" if error, was harmless error.

4. TRIAL. *Instructions. Earning capacity. Evidence.*

   Under the facts in this case, the court held that an instruction, allowing the jury to consider the plaintiff's earning capacity was not erroneous as not being supported by the evidence.

5. DAMAGES. *Personal injury actions. Instructions. Speculative verdicts.*

   Under the facts in this case the court held that an instruction that the jury might consider pain or suffering or loss of earning capacity which plaintiff "may" sustain in the future was not erroneous as allowing a speculative verdict.

6. DAMAGES. *Evidence. Disease resulting from injury.*

   In a suit by an employee of a shipper against a railroad company for injuries sustained by the giving way of a grabiron on a car which caused him to fall and strike his back against the drawhead, evidence that tuberculosis resulted from such injury was admissible.

7. TRIAL. *Instructions. Construction as a whole.*
An instruction and the language employed therein must be read in connection with all of the instructions in the case.

8. TRIAL. *Instructions. Cure of error.*

Even though an instruction taken by itself may be erroneous, as tending to lead the jury to believe that they need not base their belief as to facts on all the evidence, yet such instruction will not constitute reversible error if other instructions in the case properly expound the law on that question.

9. NEGLIGENCE. *Contributory negligence. Effect. Amount of damages.*
In a suit by an employee of a shipper against a railroad company for personal injury caused by a defective grabiron, an instruction that contributory negligence was no defense, but might be considered on the question of damages, was correct, since contributory negligence is no longer an absolute defense, in a suit for damages for personal injury, but goes only to the amount of damages.

10. SAME.
Such an instruction stated only the general law of negligence, and was not based on any federal statute whatever.

11. DAMAGES. *Personal injury. Excessive damages.*
Where an employee of a shipper was injured by falling from defendant's railroad car which he was loading, which injury resulted in partial paralysis and tuberculosis, with constant pain and confinement indoors, a verdict for twenty thousand dollars, while large, was not excessive.

APPEAL from the circuit court of Forrest county.
Hon. PAUL B. JOHNSON, Judge.

Suit by Berry Lott against the Mississippi Central Railroad Company. From a judgment for plaintiff, defendant appeals.

Appellee, as plaintiff in the court below, instituted this action against appellant to recover damages claimed to have been sustained through the negligence of defendant from alleged defective "grabiron" on a freight car. Appellee was employed by the J. J. Newman Lumber Company, a corporation owning and operating a large plant at Sumrall, Miss., for the manufacture and shipment of lumber. The business of the lumber company

constituted the chief enterprise in the town of Sumrall, situated on the line of the defendant carrier, and the lumber company, in the prosecution of its business, made requisition for, and made use of, a large number of cars for the shipment of its products. There is testimony tending to show that appellant installed for the accommodation of the lumber company abundant facilities, and that it furnished a switch engine that was used in switching cars on its side tracks, and that a special crew was regularly engaged in spotting empty cars and picking up and carrying out to the main line loaded cars, and in doing any other necessary switching. The testimony tends to prove that the employees engaged in the switching were paid by the lumber company, but that they did any switching that the railroad company required to be done on the private side tracks of the lumber company, and on the main siding of the defendant carrier at that point; that it was the business of the railroad company to deliver to the lumber company cars wanted for the loading and shipment of lumber, and to pick up and remove the loaded cars when they were ready for shipment; that just prior to the injury complained of the lumber company made requisition for cars, and in pursuance of this requisition appellant furnished for loading the two cars subject to inquiry in this suit. There was a siding adjacent to and parallel with the main line of the railroad, and the plant and lumber yards of the J. J. Newman Lumber Company were located along by and near this siding. Appellant furnished to the shipper, the Newman Lumber Company, two cars designated as LV-2763, referred to as an automobile car with end doors, and car IRC-18775, which at the time of the injury was coupled to the said automobile car. These cars were loaded by the shipper, and then picked up and switched to the siding. It was the business or duty of plaintiff to assist in loading lumber into the cars and to prepare loaded cars for shipment. At the time of the injury

these cars had been transferred from the lumber yards to the siding, but had not been accepted by defendant for transportation. Before they were accepted, it was discovered that one of the end doors of the automobile car had been forced open by the switching, and the lumber was protruding from the end. Plaintiff's foreman thereupon ordered plaintiff to go to the siding to "patch" or repair the broken door and get it in proper condition for shipment. In performing this service, which it appears was in the usual line of employment, the plaintiff, according to his testimony, found it necessary to go up the ladder situated on the end of the IRC car, and in attempting to nail the broken door on the adjacent car, plaintiff found it expedient to stand with one foot on top of the car he was working on, and to place the other foot on top of the "stirrup or hand hold of this other car," and in doing so, as plaintiff placed his foot and weight on the ladder, it pulled loose from the wood and threw, or permitted, the plaintiff to fall straight down between the two cars in a way to strike his back violently on the drawhead of the car, and thereby seriously to shock and injure the plaintiff, to such an extent that he lay practically motionless for thirty or forty minutes before the crew of the switch engine picked him up and carried him to a physician's office. There is testimony tending to show that the wood, into which the metal grabiron was driven or fastened, was decayed, and that when the plaintiff placed his foot on the top round of this ladder it easily pulled out from the rotten wood, and that this decayed condition could have been ascertained by reasonable inspection of the car. Both cars were received by appellant from the Illinois Central Railroad at Brookhaven, a point of intersection between the defendant carrier and the Illinois Central, and both cars after they were loaded, were returned to the Illinois Central at Brookhaven for further shipment over the line of the Illinois Central. These cars did not belong

to appellant but are referred to as "foreign cars" and were returned loaded to the carrier from which they were received as empties. Appellant had a car inspector at Brookhaven, but this car inspector had died prior to the trial of this case, and his records, according to the contention of appellant, could not be located, and for that reason were not introduced.

For the plaintiff, there is testimony tending to show that appellant would not have received the loaded automobile car with lumber protruding from the broken door, and that it was customary for the employees of the shipper not only properly to load the lumber in the car but properly to fasten the doors; that it was not only customary, but necessary, for the shipper in this instance to repair the broken door; that the plaintiff was ordered to do this work, and was in the line of his employment in performing the service which occasioned his injury, and that there was in fact a defective grabiron which precipitated the plaintiff across the drawhead and caused serious and permanent injuries, the extent of which was fully developed by the proof.

For the defendant there was testimony tending to show that the grabiron was not defective, that plaintiff was an employee of the lumber company, and that the latter had settled with appellee prior to the filing of this suit for a consideration of two hundred and seventeen dollars, and some proof tending to show that the plaintiff was not so seriously injured as he claimed to be, and that on one or more occasions he had made claims for other injuries alleged to have been received through the negligence of other companies.

Plaintiff's testimony tended to show further that prior to the injury he weighed on an average of one hundred and fifty to one hundred and sixty pounds, and that he was a strong, healthy, and industrious laborer, able to perform and actually engaged in the hard labor of loading lumber from the dry kilns and plant of the lumber company onto the cars, and in

doing so to lift heavy loads for ten hours a day, six days in the week; that he was a married man with a wife and one child dependent upon his physical labor for support; that prior to the injury he did not suffer from any sickness or accident of any kind, and had no lung trouble whatever; but as a result of the injury plaintiff was required to stay in bed five weeks and three days immediately following the accident, and was under constant care and treatment of physicians; that he was partially paralyzed; that he sufficiently recovered at one time to get out of bed and do some walking with the assistance of a stick, but was soon again prostrate; that his paralysis returned, necessitating confinement in bed for nine weeks, and that after the lapse of this time plaintiff, upon advice of his physician, was removed from Sumrall to a hospital in Hattiesburg, where he remained seven days; was then carried back home, and ever since has been a constant sufferer from pain, partial paralysis, and tuberculosis; and while in bed he constantly suffered pain.

On the trial of the case there was undisputed testimony that plaintiff had a pronounced case of tuberculosis of the lungs, and this disease plaintiff and his physician claimed to be the proximate result of the injury sued for. At different times plaintiff was attended by Dr. Bryant, Dr. Breuck, Dr. Anderson, and Dr. Ross some of whom as witnesses detailed the injuries of the plaintiff, and Dr. Bayne, an expert on tuberculosis of the lungs, testified that in all probability there was casual connection between the injury to the back and the tuberculosis, explaining on the witness stand that:

"Any injury or any acute disease that lowers a man's vitality or normal resistance makes a man more liable to contract tuberculosis, that is, he would not have contracted it at all; that every man that breathes the tubercular bacilli in his lung does not have tuberculosis, if he is in good health, but following a injury, or following any acute disease, or anything that lowers

his normal resistance, it renders the soil fertile, and then he takes the disease when otherwise he would not.''

This witness had made a microscopic examination of the sputum, and found Mr. Lott suffering with a pronounced case of tuberculosis, and said "the probabilities are that it was the result" of the serious injuries to plaintiff's back.

Dr. Breuck also testified that he attended and prescribed for Mr. Lott; that in doing so he was associated with Dr. Bryant; that he was called in by Dr. Bryant because the plaintiff had "some peculiar affliction he wanted me to see;" that Mr. Lott in fact had tuberculosis at the time the case was tried; and that the witness attributed "his condition at this time to that injury." The testimony of Dr. Breuck as to plaintiff's tuberculosis and its connection with the injury was not objected to by the defendant, but, on the contrary, defendant's counsel cross-examined the witness on this subject. The defendant interposed an objection to the testimony of Dr. Bayne, who testified as an expert from a history of the case, but the objection was overruled.

The cause was tried by the court and jury; there was a verdict for the plaintiff in the sum of twenty thousand dollars, and from the judgment based thereon the defendant prosecutes an appeal. Many instructions were given both parties, some of which are now assigned by the defendant as error.

Appellant assigns and argues the following points: First. That from the pleadings and proof the defendant owed no duty to the plaintiff, and there is no liability whatever. Secondly. That instructions Nos. 1 to 8, inclusive, granted appellee were erroneous. These instructions are as follows:

"The court instructs the jury for the plaintiff that, if you believe from the evidence in this case Berry Lott was working for the J. J. Newman Lumber Company loading lumber, and while so engaged was instructed by his superior to repair a door or window in

one of the Mississippi Central Railroad cars or one furnished by it to said company; and if you further believe while he was so engaged he used the ladder or handhold affixed by defendant company on another car, also furnished by it in the manner alleged in the declaration; and if you believe defendant railroad company had negligently allowed or permitted said ladder or handhold to get in a defective and dangerous condition, and knew said ladder or handhold would be used by the servants of the lumber company in the performance of their duties, and that by reason of such defective condition, if any, while Berry Lott was undertaking to use same as aforesaid, that said handhold or part of ladder on which his foot was placed gave way and caused him to fall, striking his back against the drawhead of said car injuring him—then it is your duty to find for the plaintiff.

"(2)  The court instructs the jury for the plaintiff that under the law defendant was required to furnish and equip its cars with reasonably safe ladder or handholds, and to use ordinary care to keep the ladder or handhold in reasonably safe condition, and this rule of law also applies to foreign cars furnished by it to shippers; and, if you belive from the testimony in this case that defendant furnished cars to the Newman Lumber Company, knowing that same were to be loaded with lumber, and knowing that in doing so said lumber company's servants would be required to use said ladder or handholds, then the defendant railroad company owed a duty to the servants of the lumber company to use ordinary care in seeing that the ladder or handholds on said car or cars furnished by it were kept in a reasonably safe condition.

"(3)  The court instructs the jury for the plaintiff that, if you believe defendant company furnished to the Newman Lumber Company cars equipped with ladders or handholds for the shipment of lumber, and knew at the time that said ladder or handhold would

be used by the servants of the lumber company about the loading and preparation of said car and lumber for shipment, then in using the ladder or handhold on the car for a purpose connected with the business of loading said car or in properly closing the door or window of said car, so that same might be accepted by the railroad company the plaintiff had a right to presume defendant had performed its duty in furnishing a reasonably safe ladder or handhold, and the law did not require him to make any inspection thereof before using same for the purpose of searching out or finding if said ladder was safe for said uses.

"(4) The court instructs the jury for the plaintiff that if the defendant engaged in the business of furnishing freight cars for service equipped with ladder or handholds which it may, or by the exercise of ordinary care ought to have known would be used by the servants of the shippers in loading or unloading said cars, then it became the duty of the defendant in the operation of its business, not only to furnish cars equipped with reasonably safe ladders or handholds, but to use ordinary care in inspecting or otherwise maintaining said handholds or ladders in reasonably safe repair for such uses.

"(5) The court instructs the jury for the plaintiff that if you find for the plaintiff that he was injured and damaged by the defendant's negligence, then your verdict should be for the plaintiff, and in assessing damages you may take into consideration the plaintiff's age and earning capacity prior to the injury, and you may take into consideration his earning capacity, if any, or the reduction of his earning capacity since his injury, if you believe same to be caused by the injury, and you may also take into consideration any pain or suffering caused by the injury prior to this date, and any pain or suffering or loss of earning capacity that may be sustained after this date caused

by said injury, and allow him such damages as will compensate him on account of said injury.

"(6) The court instructs the jury for the plaintiff that if you find for the plaintiff that defendant is liable for his injury, if any, then in considering the damages, if any, you believe from all the testimony that the plaintiff's present physical condition was proximately caused by the fall and injury to his back, then you may find for the plaintiff and assess such compensatory damage for such injury, if any; and, although you might further believe the tubercular germ was not and could not be created by the injury, yet if you believe but for this injury, if any, he would not have suffered any injury or damage from the tubercular germ and that this injury was the proximate cause of his present condition including the tubercular infection, then you may take his condition in consideration in assessing damage.

"(7) The court instructs the jury for the plaintiff that, if you find for the plaintiff that defendant is liable for his injury, if any, then in assessing damages, if any, though you may not believe from the evidence in the case that the plaintiff had tuberculosis or consumption, and even though you may not believe, if you believe he had it, that the same was the result of the injury, yet if you believe that the plaintiff received a fall in the manner alleged in the declaration, and as a proximate and direct result thereof received and sustained any injury, then it is the sworn duty of the jury to find for the plaintiff and asses such damages as will, in your judgment from the testimony in the case, compensate him for all the injuries sustained on account of said fall.

"(8) The court instructs the jury for the plaintiff that contributory negligence is no longer an absolute defense in a suit for damages, but such negligence, if any, only goes to the question of the amount of the damages, so that if you believe plaintiff was injured

and damaged by the negligence of the defendant in the manner charged herein so as to make defendant liable for such damages, then the court instructs you that even though you believe the plaintiff was guilty of contributory negligence, you cannot, for that reason, find against him."

Thirdly. That instruction No. 4 for appellant was erroneously modified, and that instructions Nos. 5, 6, 7, and 8, requested by appellant, were refused. The refused instructions read as follows:

"(5)  The court further intructs the jury for the said defendant, Mississippi Central Railroad Company, that if they believe from the evidence that the members of the switching crew in question were in the employ of the defendant lumber company, and not in the employ of the defendant railroad company, and that plaintiff's injury occured while he was endeavoring to close and fasten the door of one of the cars before they had been accepted for movement by the defendant railroad company, then the plaintiff is not entitled to recover against the defendant railroad company."

"(6)  The court further instructs the jury for the said defendant Mississippi Central Railroad Company that if you believe from the evidence that the plaintiff was in the employ of the defendant J. J. Newman Lumber Company, and not in the employ of the defendant railroad company, at the time of his alleged injury, then the defendant railroad company has breached no duty to the plaintiff, and it is the sworn and imperative duty, of the jury to find for the defendant Central Railroad Company.

"(7)  The court further instructs the jury for the said defendant Mississippi Central Railroad Company that if you believe from the evidence that the car in question was loaded with lumber and destined to a point beyond the state of Mississippi, and that the plaintiff at the time of his alleged injury was not in the employ of the said defendant Mississippi Central Railroad

Oct., 1918] Miss. Cent. R. R. Co. *v.* Lott. 827

118 Miss.]                    Opinion of the court.

Company, then the plaintiff is not entitled to recover of the said defendant Mississippi Central Railroad Company, and it is the duty of the jury to find for said defendant Mississippi Central Railroad Company.

"(8) The court further instructs the jury for the said defendant Mississippi Central Railroad Company that if they believe from the evidence that the car in question was loaded with lumber destined to a point in the state of Kentucky, the Safety Appliance Acts apply, and the plaintiff, if not an employee of the defendant Mississippi Central Railroad Company, is not entitled to recover."

Fourthly. That there was error in admitting testimony in reference to tuberculosis, and that the damages awarded are speculative and grossly excessive.

*S. E. Travis,* for appellant.

*Currie & Currie* and *J. W. Cassidy,* for appellee.

STEVENS, J., delivered the opinion of the court.

The claimed right of the plaintiff in this case to recover is predicated on the alleged negligence of appellant in furnishing to the J. J. Newman Lumber Company, the shipper, the freight car with a defective grabiron. The defendant challenges the right of the plaintiff to recover anything, contending that, inasmuch as plaintiff was not a servant of the defendant carrier it owed plaintiff no duty, and cannot be made to respond in damages for any injury resulting from a defective grabiron. Much is said in the briefs of counsel about the two cars having been received from the Illinois Central Railroad Company at Brookhaven prior to their loading. Whether the cars were or were not inspected, the shipment originated at Sumrall, and the cars complained of were tendered by the defendant as a common carrier of goods, and the primary duty rested

upon it to furnish cars suitable for the transportation of lumber. This duty was upon the railroad company, and not upon the shipper, to furnish, select, and inspect these cars. It is immaterial that the cars had been furnished as empties by a connecting carrier. In the present inquiry, the freight cars must be considered as much the cars of the Mississippi Central Railroad Company as if the defendant possessed full ownership. The duty to furnish proper cars cannot be avoided, and the issue should not become clouded by any argument as to the responsibility of the connecting carrier or of the shipper. As said by Mr. Hutchinson:

"Nor can the carrier avoid responsibility as a carrier by devolving upon the shipper the duty of inspecting or selecting the vehicle in which his goods are to be carried." Hutchinson on Carriers (3 Ed.) section 498.

There are no facts in this case tending to show a special agreement between the shipper and the railroad company whereby the carrier is to be discharged from liability for damages resulting from any defects in cars, but, on the contrary, the entire traffic arrangement between the J. J. Newman Lumber Company and appellant shows a most friendly and intimate arrangement whereby the lumber company is doing a large sawmill business and the railroad company is receiving and delivering all shipments and getting the entire transportation business of the lumber company. As between appellant and its employes the right of the carrier to furnish safe appliances and vehicles is not questioned, but, as stated by counsel for appellant, it is contended:

"No relationship has been shown between appellant and appellee, and there is nothing to indicate that appellant owed appellee any legal duty."

The fact that plaintiff was not employed by the railroad company is not controlling. The undisputed testimony clearly shows that Mr. Lott was employed by the shipper; that the car in question was furnished to

the shipper; that the shipper in this case was doing the loading; that the plaintiff was within his duties in attempting to fasten the car door; and that the defective condition of the car thus furnished the shipper caused the injury. Mr. Lott was lawfully on and about the car, and had a right to assume that the car tendered was not in such a defective condition as to cause these injuries. The jury has said by their verdict that the car was in fact defective. The important inquiry then, as we view the case, is whether the defective condition of the car could have been discovered by reasonable inspection. On this question there was a dispute in the testimony, and all doubts or conflicts in the evidence have been resolved in favor of the plaintiff, and on this point we see no reason to disturb the verdict of the jury. The general obligation rested upon appellant to furnish the shipper safe and proper cars, and to use ordinary care to inspect the cars in an effort to see that they were reasonably safe. Authorities on this point are abundant. Many of the cases are collated in the case note to *Chicago, I. & L. R. Co.* v. *Pritchard*, 9 L. R. A. (N. S.) 857 (168 Ind. 398, 79 N. E. 508, 81 N. E. 78). The first paragraph of the syllabi to the case mentioned states, we believe, the true rule and the one supported by authority:

"A railroad company is liable for injury, through defect in a car, to a servant of a shipper who is assisting in loading it, where the defect was imminently dangerous to persons using the car, and the circumstances were such as to require an ordinarily prudent person to put the car into proper condition before parting with it."

In *Moon* v. *Northern Pacific R. Co.*, 46 Minn. 106, 48 N. W. 679, 24 Am. St. Rep. 194, it is stated in the opinion as follows:

"One may owe two distinct duties in respect to the same thing—one of a special character to one person, growing out of special relations to him; and another

of a general character, to those who would necessarily be exposed to risk any danger from the negligent discharge of such duty. 1 Shearman and Redfield on Negligence, section 116; Bigelow on Torts, 614.''

The proof shows that the cars were furnished appellant by the Illinois Central Railroad Company, and it was the duty of appellant properly to inspect these cars and to see that they were reasonably safe. This is a duty not only imposed by general law upon appellant as a common carrier, but the testimony in the case clearly shows that appellant recognized this duty and employed car inspectors and attempted to have its equipment properly inspected, and one of the defenses relied upon on the trial of the case was the contention that the two cars had in fact been inspected and were in fact reasonably safe. Mr. Stuart, expert car inspector, testified for the plaintiff as to the rules and regulations prescribing this duty. He produced and read from regulations in writing known as ''Master Car Builders' Association Rules,'' furnished all railroads and car inspectors, and from these regulations read to the jury the rule devolving the duty in this case upon appellant before it accepted the car from the Illinois Central to see that it was ''in a safe and serviceable condition.'' This rule was referred to as ''Interchanging Freight Cars, Rule 2,'' and witness stated that if any defects were found the car should be referred to the proper ''car knockers'' to be fixed. There is testimony to the effect that a slight tap of a hammer on the grabiron would have disclosed the rotten condition of the wood.

Under the testimony, the rules and regulations of good railroading, and under general obligations imposed by law, we unhesitatingly say in this case, as stated in paragraph 4 of the headnotes to *Tateman* v. *Chicago, R. I. & P. R. Co.,* 96 Mo. App. 448, 70 S. W. 514, that:

''It is the duty of a railroad company to inspect its cars, even though received from other companies, to

see that they are reasonably safe for those who are required to go about them'' that is to say, for those who are lawfully at and about the cars.

In *Hamilton* v. *Louisiana & N. W. R. Co.,* 117 La. 243, 41 So. 560, 6 L. R. A. (N. S.) 787, recovery for plaintiff was justified on the showing that he was employed by a lumber company then operating a log train on the defendant's tracks under a special agreement for the use of the roadbed, and where the plaintiff was injured by a defective bridge on the defendant's line. It was argued in that case, as it is in the instant case, that ''the plaintiff was neither a passenger nor an employee,'' but the court directed attention to the fact that plaintiff ''was lawfully on the train as an employee of the Athens Lumber Company, which had a contractual right to the use of the track,'' the court concluding ''that the defendant railroad company is liable to plaintiff for its failure to discharge the public duty of maintaining safe bridges on its line. The fact that the plaintiff was the employee of the lessee company makes no difference.'' 117 La. 248, 41 So. 562.

The railroad company in receiving, transporting, and delivering freight well knows that shippers and consignees, and the servants of both, must have access to freight cars, must resort to cars in loading and receiving good, and with this knowledge carriers must use ordinary care to prevent injuries to parties who lawfully make use of the car. This principle is recognized and applied by the Massachusetts Supreme Court in *Ladd* v. *N. Y., N. H. & H. R. Co.,* 193 Mass. 359, 79 N. E. 742, 9 L. R. A. (N. S.) 874, 9 Ann. Cas. 988. Some of the authorities base negligence in a case of this kind upon the implied invitation of the railroad company to shippers and their servants to go upon the cars in handling shipments. So we conclude that counsel for appellant are wrong in their contention that appellant owed Mr. Lott no duty whatever. It is manifestly true this duty does not grow out of the

relationship of master and servant, but the negative proposition—that the appellant was not a servant of the railroad company—has no real bearing on this case.

What we have thus far said disposes of the main contention made for the appellant, and settles the basic right of the plaintiff, on his proof, to recover. It now becomes important to inquire whether the jury were misdirected by any of the instructions complained of. Counsel for appellant sets out and criticizes *seriatim* instructions 1 to 8, inclusive, granted appellee. Reference to the original briefs will disclose that the chief criticism made of instructions 1 to 4, inclusive, is the contention that they "extend to the appellee the benefit of the federal Safety Appliance Act;" that "the federal law protects the employees of railroads and travelers on trains only;" that "there was and could be no state law or rule of decision, in view of the inclusiveness of the federal law, making it the duty of the appellant to affix or have any kind of grabiron on the car in question, a foreign car, for the protection of appellee, an employee of the lumber company, and sustaining no relationship of any character to appellant."

The views we have expressed in this opinion on the alleged nonliability of appellant disposes of this criticism of the first four instructions. The argument that these instructions submit to the jury the federal Safety Appliance Act is a mere assumption, and a very erroneous assumption. The instructions complained of make no reference whatever to the Safety Appliance Acts (U. S. Comp. St. section 8605 et seq.), or to any federal law on the subject. They refer to no statute, federal or state. The instructions are grounded on the implied invitation of the carrier to the servants of the lumber company to make proper use of the cars in loading same for shipment, and state in language at least approximately correct the proper law of the case. There is no federal question involved.

Oct., 1918] Miss. Cent. R. R. Co. *v.* Lott. 833

118 Miss.]                    Opinion of the court.

Appellant next contends that instruction No. 5 is fatally erroneous, first, in that by the use of the words "by defendant's negligence" it assumes that in fact appellant was negligent. Other language of this instruction says, "if you find for the plaintiff that he was injured or damaged by the defendant's negligence." Conceding for the purposes of this discussion, but not deciding, that this was error, it was, we think, harmless error in this case.

It is next attacked on the ground that it authorizes the jury to take into consideration appellee's earning capacity, when there was, as appellant contends, no proof on this subject. We think the facts show with reasonable certainty that the plaintiff was a hard-working day-laborer in the sawmill plant of the J. J. Newman Lumber Company; his employment, his average wage, and habits of life were fully developed and fully shown in the presence of the jury.

The instruction is also attacked on the ground that it permits the jury to consider pain or suffering or loss of earning capacity which the plaintiff "may" sustain in the future. While counsel do not expressly say so in their briefs, it is intimated that the word "may" was improperly used, and that it "turns the jury into the relm of possibilities and speculation." There is no merit in this contention. Jurors are supposed to be men of good sense and sound judgment, and the proper predicates, we think, were laid in the instruction. The exact language in reference to future pain, suffering, or loss of earning capacity is "any pain or suffering or loss of earning capacity that may be sustained after this date caused by said injury."

As stated in *Dean* v. *Kansas City, St. L. & C. R. Co.,* 199 Mo. 386, 97 S. W. 910, quoting from the prior Missouri case of *Reynolds* v. *St. Louis Transit Co.,* 189 Mo. 408, 88 S. W. 50, 107 Am. St. Rep. 360, the word "may" here "comprehends the idea of probability, and also the thought of what is with more or less

118 Miss.—53

certainty, to be expected.'' The jury, we are sure, did not misunderstand this instruction, but, on the contrary, had their minds directed to the probable and reasonable results of the injury complained of. If they believed the testimony, Mr. Lott at the time of the trial was a hopeless and permanent cripple, unable to do manual labor or to hold any job requiring physical labor. He was altogether disabled from doing the work or following the business he had been engaged in and which he was qualified to do. As to future pain, the proof showed that the plaintiff had been a constant sufferer from pain, so much so that he could only be relieved at times by ''dopes,'' and the statements of the plaintiff as a witness in his own behalf are to the effect that subsequent pain would be sure to follow, especially in view of the fact that plaintiff was then, under the undisputed testimony of physicians, in a weakened and tubercular condition. What we have said as to any subsequent or future pain applies equally to plaintiff's loss of earning capacity. Under the facts of this case the employment of the word ''may'' did not authorize the jury to roam the fields of speculation or conjecture. *Reynolds* v. *St. Louis Transit Co.*, 189 Mo. 408, 88 S. W. 50, 107 Am. St. Rep. 360; *Caplin* v. *St. Louis Transit Co.*, 114 Mo. App. 256, 89 S. W. 338.

It is contended that the sixth instruction ignored the question of negligence, and also permitted the jury to speculate on damages sustained as a result of tuberculosis. This indeed brings us to the most delicate question argued at the bar. Was testimony as to the existence of tuberculosis properly admitted and properly considered by the jury? In the determination of this question due weight should be given the facts of this particular case. The physicians testified unqualifiedly that plaintiff had tuberculosis of the lungs at the time his case was submitted to the jury, and the plaintiff, as he sat upon the witness stand in the presence of the jury, presented himself as one hopeless and

doomed by a plague which has taken a heavy toll of life. In fact, it was represented in the oral argument of counsel without objection, that the plaintiff, since the trial of this case in the court below, has died of this disease and the consequent injury here sued for, and that the beneficaries of this judgment are now his widow and his child of tender years. It is well to observe that nothing said in the instructions required the jury to allow damages from tuberculosis, but the jury were authorized to take into consideration the diseased condition of the plaintiff if they believed from the evidence there was any causal connection between the injury and the disease. The question argued is not a new one, but one which has confronted the courts in damage suits many times. In *Crane Elevator Co.* v. *Lippert,* 11 C. C. A. 521, 63 Fed. 942, it was contended that the injury sued for was not in fact caused by the fall of the plaintiff, but by the presence of tubercular germs then existing in the plaintiff's system. In response to this argument the court said:

"The plaintiff in error further contended on the oral argument that the injury sustained by the defendant in error was not the proximate result of his fall, but arose from the presence of tuberculous germs in his system. It was the hurt occasioned by the fall which afforded an opportunity for the active development of the poisonous germs which had theretofore been innocuous. It was the wrongful act which gave rise to the consequent injury, and it is not apparent that the injury would have occured in the absence of such cause. In the case of *Railway Co.* v. *Kellogg,* 94 U. S. 469, 475 (24 L. Ed. 256), it is said: 'When there is no intermediate, efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault, and self-operating, which produced the injury.'

836  Miss. Cent. R. R. Co. *v.* Lott.    [Sup. Ct.

Opinion of the court.    [118 Miss.

"The wrongful act of the plaintiff in error subjected the injured party to other and dependent causes, which were set in motion by the original hurt. For this it is answerable."

A similar question was presented in *Vogeley* v. *Detroit Lumber Co.*, 196 Mich. 516, 162 N. W. 975. The court there reviewed the testimony saying:

"We are of the opinion that it tends to show that the deceased was struck while at his work by a broken belt and injured about the face, nose, and right side; that as a result thereof traumatic pleurisy set in, and later developed into pneumonia; that, while Vogeley was suffering with pneumonia, typhoid fever set in, and as a result of both maladies he died."

The opinion further concluded: "We think the foregoing testimony, if believed by the board (Industrial Accident Board under Workmen's Compensation Act) supports its finding that pneumonia was a contributing cause of death.".

In *State* v. *District Court*, 138 Minn. 334, 164 N. W. 1012, a case under the Workmen's Compensation Law (Gen. St. 1913, chapter 84a), it was held that the evidence justified the trial court in finding that the injuries complained of caused the plaintiff to have pulmonary tuberculosis, although three expert physicians in that case testified that claimant's death was caused by disease and not by the injury.

In *Balzer* v. *Saginaw Beef Co.* (Mich.), 165 N. W. 785, the very practical observation is made by the court, speaking through Ostrander, J.:

"It is possible for one to have the disease and not know it, so the physicians say, and sometimes an apparently strong, healthy man is found to be afflicted with the disease. But the evidence strongly supports the conclusion that claimant was a strong, healthy man at the time he was injured. It does not directly negative the fact, which could be learned, perhaps, only by an examination of his urine, that immediately before

the injury no test which could be applied would have disclosed a diabetic condition.  . . .

"No other event, or experience, made manifest in the testimony accounts for his diseased condition. If he was a well, healthy man when injured, it is probable, the physicians say, that the diabetic condition is a result of the injury. The conclusion that it was caused by the injury is not then mere conjecture. The finding of the board rests upon something more substantial."

In *Van Keuren* v. *Dwight Divine & Sons,* 179 App. Div. 509, 165 N. Y. Supp. 1049, the headnote states the point of law and the conclusion reached by the court as follows:

"Where an employee had tuberculosis, and received an injury 'arising out of and in the course of employment,' which accelerated the disease and caused his death, an award under Workmen's Compensation Law, section 3, subd. 7, providing for award in case of injury arising out of and in the course of employment and such disease as may naturally and unavoidably result therefrom, was proper, even though the disease itself might not have resulted from the injury."

In *Luisi* v. *Chicago Great Western Ry. Co.,* 155 Iowa, 458, 136 N. W. 322, the court said: "But on the other hand, if it be shown that the plaintiff's physical injury superinduced, or contributed to, the production of pneumonia, the defendant is liable therefor. If pneumonia results from an injury, which renders the person susceptible thereto, the injury is a predisposing cause of the pneumonia. 1 Thompson on Negligence, section 154; *Murphy* v. *Railroad Co.,* 31 Nev. 120, 101 Pac. 322, 21 Ann. Cas. 502; *Railroad* v. *Buck,* 96 Ind. 346, 49 Am. Rep. 168. There was evidence tending to show that the injury received by the plaintiff was, at least a predisposing cause of the pneumonia, if not the sole cause thereof. We are of the opinion therefore that the evidence under consideration was properly received."

Much is said in this case to the effect that there is no causal connection between the germs in plaintiff's lungs and the injury to the plaintiff's back. A similar contention was made in the case of *Keegan* v. *Minneapolis & St. L. R. Co.*, 76 Minn. 90, 78 N. W. 965, in which the court, by Mitchell, J., made the following observations:

"But, conceding that all the expert testimony as to the 'germ theory,' or any other theory, and as to the precise manner a bodily injury produces articular rheumatism, should be disregarded, yet we think the evidence in this case, based upon both the medical authorities and upon the professional experience of some of the witnesses, is sufficient to justify the conclusion that articular rheumatism so often follows personal injuries that this is not a mere coincidence, but that oftentimes the injury is the exciting cause of the disease. When this is reinforced by the evidence that the deceased was never previously attacked by the disease; that it developed in such a severe form so soon after the injury, without any other apparent cause—we think that the jury was justified in concluding that the latter was the cause of the former, regardless of the truth or falsity of many of the particular theories of the experts."

It was not only expedient, but necessary, for the plaintiff in this case to show with some particularity his physical condition at the time of the trial; in doing this he very naturally related the existence of his tuberculosis and his condition generally. What else could the plaintiff do? Would it have been proper to suppress and to have kept from the knowledge of the jurors the existence of the disease? How could the jury properly relate and reconcile all the testimony as to the plaintiff's physical condition and the probability of pain and suffering in the future without a searching inquiry into the full truth? The jury has awarded a lump sum as full damages sustained and to be sustained, and, this

being so, we might ask, as did the court in *Beauchamp
v. Saginaw Mining Co.*, 50 Mich. 163, 174, 15 N. W. 55,
69, (45 Am. St. Rep. 30):

"Can it be said with judicial certainty that the injury,
the sickness and weakness following therefrom, did not
directly cause or largely contribute to the attack of
pneumonia, and that the party wrongfully injured was
as able to withstand this resultant attack as he would
have been if 'a good, healthy, well-nourished boy' as
at the time he received the injury?  If the injury re-
ceived and sickness following concurred in and con-
tributed to the attack of pneumonia, the defendant must
be held responsible therefor.  It cannot be said that here
was a second wrongful act, or a disease, wholly in-
dependent of the first wrong, which caused the death of
the boy."

According to the proof he had no occassion prior to
the injury to suspect the presence of tubercular germs
in his lungs, and he positively states that so far as his
knowledge went he did not have the disease prior to
the injury.  Could any truthful witness ordinarily testify
to more?  The question is a practical one, and should be
viewed in a common-sense fashion.  It is a matter of
common knowledge that the normal, reasonably healthy
laborer, whose health has not been sufficiently impaired
to require medical treatment, does not know and cannot
know whether he has tubercular germs in his system.
In the very nature of things it was impossible for the
plaintiff to have testified as to whether he did or did
not have these germs in his lungs on the day he re-
ceived his fall.  He only knows he did not have any in-
dication of tuberculosis prior to the fall, and he well
knows that soon after the injury he developed a pro-
nounced case of tuberculosis of the lungs.  It needs, we
think, no expert testimony to justify the jury in con-
cluding that one's power of resistance may become very
much lessened, and one's vitality lowered by severe
accident or injury such as is here sued for, and in con-

cluding that tubercular germs find a fertile soil in those who for any reason are in a weakened or famished condition. This indeed is now a question that confronts nations as well as individuals. The particular instruction here under consideration had the proper qualification "if they find for the plaintiff that the defendant is liable." It is elementary that this instruction and the language employed therein must be read in connection with all of the instructions in the case.

What we have said in reference to instruction No. 6 applies also to appellant's criticism of instruction N. 7. Appellant excepts to the use of the word "believe" in this instruction. It is manifest that the belief here referred to must be gathered from the evidence in this case, even to the extent of requiring the jury to believe from a preponderance of the evidence that the tuberculosis had a direct connection with plaintiff's fall.

Instruction No. 8 should have qualified the language "if you believe" by a proper reference to the evidence; but this instruction, read in connection with the other instructions in the case, did not, we think, mislead the jury by a failure to state that they must entertain their belief from all the evidence in the case, and accordingly does not amount to reversible error.

There is no merit in the contention that the eighth instruction denied the defendant its right to plead or claim contributory negligence. It stated plaintiff's theory, and in doing so stated the law of this jurisdiction correctly. It made no reference whatever to any federal act, and the argument of counsel that it presented the federal statute as controlling is entirely without merit. The law given in charge by this instruction is the general law of negligence and is not based upon any federal statute whatever.

The refused instructions asked for by the appellant are assigned for error. All of them are in conflict with the plaintiff's theory of the case and in conflict with the

plaintiff's instructions. There was no error in refusing any of them.

It is insisted, finally, that the verdict is grossly excessive. The award, in the writer's opinion, is undoubtedly large, but this is a question about which individuals might well differ. It is always a delicate task to measure pain, suffering, or permanent injury in terms of dollars and cents. This task primarily is the province and responsibility of jurors. In the present case the jury not only heard elaborate testimony for both sides, but had an opportunity to see the plaintiff and to hear first hand his statements as to his physical condition, and the extent of his pain and suffering; and we cannot say that this amount is not justified by the testimony. There was a strenuous effort by the defendant to show that plaintiff was exaggerating his physical disabilities, but on the whole record there was no dispute about the plaintiff having received the fall between the two freight cars, and about the fact that he was there picked up by the switching crew and carried away for medical attention. The real issue of fact was whether the fall was due to accident or to a defective ladder on the car. This conflict of fact on this vital issue has been settled in favor of the plaintiff. On the whole case we see no reversible error; and we leave the responsibility for the result where we find it.

*Affirmed.*

Etheridge, J. (dissenting).

In my opinion the case should be reversed and a new trial granted for two distinct errors, to wit: The giving of the fifth instruction for the plaintiff, and the sixth instruction for the plaintiff. These instructions have been set out at large with others in the statement of facts in the majority opinion. I desire again to call attention to their language, showing how erroneous they are and how materially they affect the verdict in this

case. In addition to these two instructions there are numerous errors which are not such as would be reversible of themselves, and hence will not be considered in this dissenting opinion.

The fifth instruction for the plaintiff told the jury, in substance, that if the jury found for the plaintiff that he was injured and damaged by defendant's negligence, then in assessing damages it may take into consideration plaintiff's age and earning capacity prior to the injury, and may take into consideration his earning capacity if any, or the reduction of his earning capacity since this injury, if it believed same to be caused by the injury, and it may take into consideration any pain or suffering caused by the injury prior to this date and any pain or suffering or loss of earning capacity that may be sustained after this date, caused by the injury, and allow him for such damages as will compensate him on account of said injury. The declaration alleged that the plaintiff had an earning capacity of one dollar and a half per day, and the record shows that he was thirty-three or thirty-four years of age, but the record does not show exactly what he was earning at the time of his injury, or what was the current wages paid for such labor. The record shows that he was at work, and it is not to be presumed that he was working for nothing, but before he can be allowed compensation for loss of earning capacity the evidence must furnish the jury the facts upon which to base a judgment. It may be that the evidence showed that from the time of the injury to the time of the trial he had not been able to earn anything, but it does not show that at the time of the trial there was a total permanent disability resulting from the injury, and, if it showed this, there is no evidence of the expectancy of the life of Lott, so, there is no basis in the evidence from which a jury could find a verdict for any sum without embarking upon the merest conjecture. Of course, it devolved on the plaintiff to prove these

facts, as he was seeking to place liability upon the railroad company.

Again the instruction authorizes the jury to take into consideration any pain or suffering caused by the injury prior to the date of the trial, and also any pain or suffering that may be sustained after this date caused by the injury. In other words, the jury were authorized not only to allow compensation for pain already suffered, and which was disclosed by the evidence, but was allowed to go into the future and allow compensation for all pain and suffering that would, or rather that may be, suffered in the future. The instruction does not tell the jury as to the future pain that the evidence must disclose to them with reasonable certainty the character, duration, and intensity of the pain to be suffered in the future, nor is there any evidence in the record, either expert or other, which would tend to show with any reasonable certainty that there would be any future suffering, or, if there would what kind of suffering, how long it would continue, or any sufficient guide to warrant the jury in reaching out into the future and allowing compensation money for such pain. It was the duty of the plaintiff to show by expert medical testimony the permanency of the injury, if it would be permanent, the amount of pain that he would suffer, if he was to continue suffering pain, and how long such suffering would continue in all reasonable probability, so that the jury could estimate from the evidence rather than from their "inner consciousness" and best judgment how long the plaintiff would suffer from looking at him at the time of the trial. The injury from which the plaintiff was suffering was an injury to the small of his back occasioned by its striking the "bulkhead" or "drawhead" of the car. This injured place seems to have been bruised at the time of the fall, and to have remained in a bruised condition for some time thereafter, but one of the physicians in his examination, testifying as favor-

ably to the plaintiff as he could, says that he could
not tell the extent of the injury, or that he was injured
at the time of the trial, except when he would touch the
place the plaintiff felt pain. He could not undertake,
and did not undertake, to say how long this soreness
would remain, what its degree of intensity would be in
the future, or to lay any predicate whatever from
which the jury could rightfully draw any conclusion on
future pain and suffering.

The verdict was for twenty thousand dollars, and
it is manifest that this verdict was largely based upon
the future pain and suffering, and of the tuberculosis
complained of in the sixth instruction, and it is in-
conceivable how the jury reached any satisfactory re-
sult, unless they allowed the plaintiff the full "three
score years and ten," and allowed him to recover for
suffering and pain during this period as well as the loss
of all earning capacity during that time. It may be
true, as stated in the majority opinion, that it is
difficult to measure pain and suffering and value it;
however, there must be some standard of certainty
in the law, and it devolved upon the plaintiff, who
has the burden of proof, to establish this standard of
certainty. How much did the jury consider the plaintiff
would suffer? The evidence is silent. They were left with-
out guide or criterion, but were turned loose in the
broadest field of speculation, with permission from the
court to allow for all pain and suffering that may be
suffered in the future—not such as the evidence points
to with reasonable certainty, but such as, in the un-
guided determination of the sympathetic jurors, who
were doubtless properly influenced by the fact that the
plaintiff had a wife and child ten years old, who needed
the money, would think proper.

The sixth instruction for plaintiff tells the jury that,
if it finds for the plaintiff that the defendant is liable
for the injury, in considering the damages, if any, if it
may believe from all testimony that the plaintiff's pres-

ent physical condition was proximately caused by the fall and injury to his back, then you may find for the plaintiff, and may assess such compensatory damages for such injury, if any, and although you might further believe the tubercular germ was not and could not be created by the injury, yet if you believe but for his injury, if any, he would not have suffered any injury or damage from the tubercular germ, and that this injury was the proximate cause of his present condition, including the tubercular infection, then you may take his condition into consideration in assessing damages.

This instruction is particularly erroneous because there was no evidence in the record from which the jury could lawfully infer that the tuberculosis of the plaintiff resulted from the injury to his back. The medical experts testified clearly and certainly that the bruised portion of the back was not infected with tubercular germs at all, and testified that unless it was so infected the plaintiff would not have contracted the tubercular germs in the lungs from such injury; that the fall itself did not engender the tubercular germs, and could not do so. The doctors, in the most favorable aspect to the plaintiff, said that the proof of the bruise to his back probably reduced his physical strength and resisting power so as to make the plaintiff a fit subject for attack by tubercular bacilli. There is not the slightest suspicion in the evidence anywhere as to how, or when, or where the plaintiff came into contract with the tubercular germs with which he was affected. If the railroad is responsible at all for the tubercular condition, it could only be held responsible on the theory that the plaintiff's physical condition was so reduced and weakened by the injury as to make him susceptible to infection. The law would then require the plaintiff to prove that after such injury and while in such condition, and without fault of his own, the plaintiff came in contract with tubercular germs and became infected. Certainly it is up to the plaintiff to prove this. Suppose

that the plaintiff did come in contact with tubercular germs after his injury through fault of some one else than the defendant. Would not the person whose fault resulted in this infection be the person responsible for his injury rather than the railroad company? If plaintiff had shown the circumstances of his infection as to when, where, and how he came in contact with tuberculosis, we might judge from the facts whether the railroad company was liable, and, if so, the amount of negligence and culpability attaching to the respective parties, and weigh their rights in the light of such facts, but here we are left wholly ignorant of the entire subject-matter, and because the plaintiff was found infected at the trial the jury and court have jumped at the conclusion that he could only have been infected by the agency, the railroad company. There was no medical examination of plaintiff for tuberculosis shown in the record, at least until the very time of the trial, and the sputum was collected at the trial, analyzed by a physician, and the fact established, but not a word of expert testimony otherwise showing the length or duration of the infection, how long it had existed, or from whence it arrived.

It is true that the plaintiff undertook to cover the ground by saying that he had been a healthy man so far as he knew prior to his injury, and that some ninety days after the injury he felt pain in the region of his lungs. In view of the fact, however, that the medical testimony ·in the record shows that the injury could not of itself produce tuberculosis, but could only produce a physical condition favorable to its being contracted, it is impossible to say in this record that the injury caused the infection at all. The plaintiff may have had the infection already, or he may have contracted it either through his own wrong, or of some other person subsequent to the injury, in neither of which cases would the railroad company be responsible for its existence, and especially for the entire combined injury. The

majority opinion glosses over this phase of the case with the assumption that it is a matter of common knowledge that a weakened physical condition reduces the resisting power against the ravages of this frightful disease, and assumes, apparently, that none but the weak can become infected with tuberculosis. Common experience teaches the contrary, and while the weak are most susceptible to infection than the strong, yet it is a matter of such common knowledge that apparently strong and healthy people are infected and yearly die with the ravages of this disease is too well known to need comment. However well known the hypothesis stated might be, it devolved upon the plaintiff in this case to show, before recovering from the railroad, that, as a direct and proximate cause of the injury by the railroad, he, the plaintiff, was unavoidably brought into contact with this disease, and that he contracted it as a result of his injury and weakened condition, and that, if he cannot establish these facts, he cannot inflict his misfortunes upon the railroad company. Who can say whether the plaintiff would have had tuberculosis had he not received the injury? Who can say whether he had it or did not have it at the time of the injury? There is no satisfactory evidence in the record from which any satisfactory conclusion can be drawn upon this subject. It is the merest speculation; a voyage upon a sea of uncertainty; a ship, ''floating sport of the tempestuous tide, with no port to shield and no star to guide.''

It is not doubted that in proper cases a railroad company would be liable to a person for negligence which resulted in the injury and infection of a person through fault of the railroad company, such as having infected cars, or carrying a patient into an infected hospital, but before a liability can attach there must always be a wrong and injury by the defendant, and a direct proximate causal connection between the wrong of the company and the injury of the plaintiff.