REED *v.* NEW ORLEANS GREAT NORTHERN R. Co.

(Division A. Jan. 1, 1934. Suggestion of Error Overruled June 11, 1934.)

[151 So. 553. No. 30613.]

Ford & McGehee and Rawls & Hathorn, all of Colum-
bia, for appellant.

300

Henry Mounger, of Columbia, and **Flowers, Brown & & Hester,** of Jackson, for appellee.

302

**McGowen, J.,** delivered the opinion of the court.

In an action at law appellant sought to recover damages from the New Orleans Great Northern Railroad Company for personal injuries. On issue made up, and trial before a jury, a verdict was returned in favor of the appellee, and appeal is prosecuted here by Reed.

Reed was a conductor employed by the Great Southern Lumber Company, and operated one of its log trains running between Bogalusa, Louisiana, and Georgetown,

Mississippi. The lumber company had a logging railroad running out from the railroad at Georgetown into the woods. Reed received his pay from, and was in all respects the servant of, the lumber company. On the day of his injury he had brought his train from Bogalusa to Georgetown and had reached the latter place. North of the station about a mile the railroad had a wye where engines and cars were turned, and a switch which led from the main line of the railroad and was used by the lumber company to carry cars out to the woods and bring them back loaded to be further transported over the line of the railroad company. The lumber company moved its cars as and when directed by the agents and officials of the railroad company. The lumber company operated its cars on this railroad under some kind of contract which was not offered in evidence, but it is undisputed that the railroad company, under that contract, was under the duty to keep its roadbed, track, bridges, and all its appurtenances in repair. The lumber company had no sort of control and no right to repair the right of way, track, bed, or bridges. In fact, save for the operation of trains, the lumber company had no sort of right or authority or control over the physical properties of the railroad company.

By his declaration and proof Reed sought to show that the railroad company was negligent in the discharge of its duty, in that it had allowed physical defects in the structure of a bridge, on account of which he alleged he was thrown, or caused to fall, from the bridge to the surface below and was seriously injured. It was alleged that his injury was proximately due to and caused by the concurrent negligence of the railroad company in not properly ballasting its bridge at the point where he was injured, and also of the lumber company for having improper appliances (on its car) for releasing air. It was shown that at or about this point, near the conjunction of the railroad with the lumber company's logging road, it

was necessary and proper for the mutual advantage of the two companies that the air be released, or bled, from the cars, so that they could be transported to the woods over the lumber company logging road. When Reed sought to bleed a certain car which was standing on the main line of the railroad, the rod, which is attached to valves on the brake apparatus underneath the cars, was missing and a piece of bailing wire had been substituted therefor; and when he pulled the wire, as it was his duty to do, it broke and he was thrown backward, but, according to his testimony, he had regained his footing upon a very large piece of slag which turned with him and caused his injury. There were about sixty cars in this train. This particular operation of bleeding the cars and stopping them at this point for that purpose had been practiced for a long time.

The evidence tends to show that if the bridge was ballasted with loose slag of the size introduced as an exhibit placed on top, this was not a proper construction. The contention of the railroad company, sought to be proved by its witnesses, was that the bridge was in all respects properly constructed, and no such pieces of slag as that introduced in evidence were placed there.

Prior to the institution of this suit, Reed had settled with the Great Southern Lumber Company for the sum of four thousand five hundred forty-nine dollars, under the Louisiana Employers' Liability Act (Act La. No. 20 of 1914, as amended). This was a compromise of weekly payments which were due Reed under the Louisiana statute. When this suit was filed, Reed served formal written notice on the Great Southern Lumber Company and invited it or its insurer to intervene as a party plaintiff as contemplated by the Louisiana statute. Pursuant to the notice the Guardian Casualty Company, insurer for the Great Southern Lumber Company, which had paid the compromise settlement to Reed, did appear and file its petition of intervention. A motion was made by the

plaintiff to strike this intervention from the files, which was overruled by the court.

On the trial Reed offered one of his attorneys who, over the objection of the railroad company, went into detail as to this compromise settlement. It appears from the Louisiana Act that in the event a third party is liable and suit is brought thereon by the injured party, the employer or its insurer may intervene and is entitled to recover from said third party in the event the servant recovers with attorney fees. See Burke-Roberts Employers' Liability Act No. 20 of 1914, as amended. The railroad company objected to the introduction of evidence with reference to this intervention, although it had pleaded a release on account of the compromise settlement made by the lumber company with Reed.

The court gave the following instruction for the defendant: "The court instructs the jury for the defendant that the railroad company was under no duty to the plaintiff, Lem Reed, to furnish him a safe place in which to work. But on the other hand the court instructs the jury that the duty to furnish him a safe place in which to work rested solely on his employer, the Great Southern Lumber Company."

Appellant relies upon two propositions for reversal here: First, the overruling of his motion to strike the intervention from the files; and, second, the giving of the instruction set forth at length above.

On the first proposition appellant urges that it was error for the court to overrule the motion for the reason that under the Louisiana statute the intervener was a joint tort-feasor, and therefore was not entitled to intervene in an action against its fellow tort-feasor; his theory being that his injury was due to the concurring negligence of the Great Southern Lumber Company, his employer, and the New Orleans Great Northern Railroad Company, whose duty it was to keep the roadbed and bridge in safe repair,

We are of the opinion that it is unnecessary for us to decide the effect of the Louisiana statute in this case, for the reason that the appellant invoked by his written notice the intervention of the insurance company, and provoked whatever harm was done him by the jury by offering one of his attorneys as a witness to go into details of the compromise settlement, to which the railroad company strenuously and seasonably objected, which objection was overruled by the court. The railroad company did not desire either the intervener or the appellant to recover anything, and it resisted to the utmost the common cause fight of the two allies. On the evidence the railroad company was in no wise liable nor can error be charged to it in this behalf.

We are of opinion, also, that the giving of the instruction set forth in extenso was reversible error in this case. It was tantamount to a peremptory instruction. There was no contention but that Reed was the servant of the lumber company. There was no sort of claim either in the pleadings or in the proof that he was the servant of the railroad company. If the railroad company's act in the matter of the structure of the bridge was negligence, then the railroad company was directly liable to Reed, not because of the relation of master and servant which existed between him and the lumber company, but because of the duty of the railroad company to use reasonable care to keep its bridges in a reasonably safe condition for the men in the employ of the lumber company who were compelled to work at this place. The Southern Lumber Company had no sort of control over the repair or the maintenance of this track. The evidence showed that was the sole and exclusive duty of the railroad company, and if the jury was of the opinion that there was neglect of duty with respect to the placing of the slag as ballast on this bridge and that this negligence concurred with the negligence of the lumber company and proximately brought about the injury of which complaint is

made, then the railroad company owed the servant of the lumber company a duty which had been violated.

The servant Reed knew when he entered the employ of the lumber company that it was the duty of the railroad company to keep its roadbed and bridges in repair. He knew that the railroad company had exclusive control over the roadbed, and that his master, the lumber company, had no sort of duty with respect thereto.

Appellee cites the cases of Buckner v. Railroad, 72 Miss. 873, 18 So. 449, 450, and Travis v. Railroad Co., 119 La. 489, 44 So. 274, 10 L. R. A. (N. S.) 1189, 121 Am. St. Rep. 526, as authority for the action of the court in granting this instruction. In the Buckner case, Special Judge CAMPBELL specifically stated that the court at that time was not compelled to consider the divergence of opinions relative to the question as to whether or not a lease of a railroad by its owner acquitted the lessor from all liability where the lessee was in control thereof. The court aptly stated what was decided in this language: "The precise question here presented is as to the right of a servant of the lessee to recover of the lessor for a cause of action he has against the lessee, his employer, for an injury received by the use of defective machinery leased." The facts in that case showed that the duty was upon the master to furnish the appliances, of which it had complete control, to its servants—in that case a defective hand car.

In the case at bar there is no contention that the lumber company would be liable or had any duty to perform relative to the maintenance of the roadbed and bridge in question. The cause of action in the Buckner case was against the plaintiff's employer, the lessee of the road. In the case at bar the master has settled with its servant for its negligence by paying him four thousand five hundred forty-nine dollars. Its negligence was a defective rod, attached to a car for the purpose of releasing the air from the brakes so that the train might be removed.

The negligence charged here against the railroad company is to be found in the allegation that the roadbed over this bridge was improperly constructed; that was a question for the jury. The same might be said of the Louisiana case, Travis v. Railroad, supra, for the facts there do not bring it within the rule here applicable.

If this right of the lumber company to run its train under the orders of the owner of the railroad company can be called a lease, then its authority thereunder was very limited, and liability for the upkeep and maintenance of the roadbed and bridges was entirely that of the lessor—there was no liability upon the lessee, the lumber company. Reed knew that; all parties knew it, and if the roadbed at the point where he was injured was negligently constructed, still Reed had a perfect right to be there; he was lawfully and of necessity there; the railroad company knew it was his duty to be there, to see that the lumber company's train cleared the tracks so that its own trains might use the track in transportation. This case is put squarely upon the ground that the railroad company, the lessor, retained entire and exclusive control of its track and roadbed, and that it not only assumed the duty of its proper maintenance but excluded any one else from performing that service.

The rule is thus stated in 51 C. J. 1092, sec. 1139: "Regardless of the effect of a lease in ordinary cases, if the lessor company retains a control over the operation of the road, it will be liable for injuries resulting from such operation." As sustaining this view, also see sections 1142 and 1144 of the same book, also the cases of Chesapeake, etc., R. Co. v. Howard, 178 U. S. 153, 20 S. Ct. 880, 44 L. Ed. 1015; Driscoll v. Norwich, etc., R. Co., 65 Conn. 230, 32 A. 354; and also Hamilton v. La. R. Co., 117 La. 243, 41 So. 560, 6 L. R. A. (N. S.) 787, where the servant of a lumber company, as here, sued both the lumber company and the railroad company for injuries received by him while employed as the servant of the lumber com-

pany. In the last case the court held that the railroad company was liable because it had assumed the obligation, and the lessee, the lumber company, was not liable because it had not assumed the obligation. Liability is not contractual, but arises from the duty assumed by the railroad company. Compare Mississippi Central R. R. Co. v. Lott, 118 Miss. 816, 80 So. 277, and the instruction there considered and refused.

The obligation herein dealt with is not dependent upon contract, but is based upon a failure to perform a duty assumed by a person which results in injury or damages to another.

In the case at bar Reed was not a trespasser; he was more than an invitee.

The instruction above set forth told the jury, in effect, that unless Reed was the servant of the railroad company, he ought not to recover in the case. That instruction of necessity produced the verdict in this case, assuming that the jury considered the instructions of the court. Independent of its duty to the public, the railroad company owed to this individual the specific duty of exercising reasonable care; it knew he was lawfully and rightfully at the place where his accident and subsequent injury occurred.

Reversed and remanded.